COMMONWEALTH *vs.* EUGENIA MOORE.

No. 86-716.

Suffolk.   June 4, 1987. — November 17, 1987.

Present: GREANEY, C.J., DREBEN, & SMITH, JJ.

*Homicide. Evidence,* Expert opinion, Relevancy and materiality. *Battered Woman's Syndrome.*

At the trial of a murder case, no error appeared in the judge's exclusion, after voir dire, of a psychiatrist's testimony concerning "battered woman's syndrome" where such testimony was irrelevant because the defendant did not raise the issue of self-defense. [65-69]

INDICTMENT found and returned in the Superior Court Department on August 13, 1985.

The case was tried before *John T. Ronan,* J.

*Frank G. Kelleher (James E. McCall* with him) for the defendant.

*Jane Donohue,* Assistant District Attorney, for the Commonwealth.

SMITH, J. During the early evening hours of June 6, 1985, Alfred Phillips, Jr., was stabbed to death in Boston. The defendant was arrested the following day and charged with Phillips's murder. She was put to trial on an indictment that charged her with murder in the first degree and convicted by a jury of second degree murder. The only issue raised by the defendant on appeal is the trial judge's exclusion of expert testimony offered by the defendant on the subject of the "battered woman's syndrome."

We first summarize the Commonwealth's evidence as it relates to the issue. The defendant, age twenty-seven at the time of the incident, was employed by the MBTA as a bus driver. The victim was her former boyfriend. They first met early in 1984. A short time after they became acquainted, the

victim moved into the defendant's apartment. He stayed about a year, then moved out sometime in March, 1985.

On June 6, 1985, at about 4:45 P.M., an MBTA police officer responded to a report of a disturbance at the Forest Hills MBTA station. When he arrived, he saw the defendant and the victim arguing. The victim appeared to be intoxicated. The officer conducted a pat frisk of the victim, but did not find a weapon. The officer then told the victim to stop bothering the defendant and the leave the area or he would be arrested for trespassing. The victim left, and the officer explained to the defendant how to obtain a restraining order from a court. He also told her where she should file an incident report with the Boston police department. The defendant responded that she would "take care of it." The officer did not see any evidence of any physical injuries to the defendant.

Later the same day, at about 7:15 or 7:30 P.M., the defendant parked her automobile outside a store in Boston and went into the establishment to buy some candy. When she came out of the store she was approached by the victim, who stopped her. After the two had engaged in conversation for a few minutes, the victim spat into the defendant's face. The defendant then took a knife from her waist and, using an overhead motion, stabbed the victim twice. The victim's hands were at his side when he was stabbed. After stabbing the victim, the defendant ran a short distance from the scene. She then walked back to her automobile and drove away. She was arrested the next morning at the Dudley Street MBTA station.

In the course of the defendant's case, the defendant called as a witness Dr. Daniel M. Weiss, a psychiatrist. Defense counsel informed the judge that he was offering Dr. Weiss as an expert on the "battered woman's syndrome" and requested a voir dire on the matter. The judge granted the request.

During the voir dire, Dr. Weiss answered several questions about his background as a psychiatrist. He also stated that he was familiar with an "emerging theory" called the "battered woman's syndrome." He testified that he had examined and treated at least six and perhaps as many as twelve women who had exhibited symptoms of being battered women. Those symp-

toms, he related, include physical bruising, reluctance to tell about beatings, tearfulness, loss of self-esteem, living in a constant state of fear, a feeling of hopelessness, and feelings of impending doom and imminent danger on account of the male in a relationship. The witness testified that, as a result of his examination of the defendant, he was of the opinion that the defendant exhibited some of the emotional symptoms of the battered woman's syndrome. He further stated that, if allowed, he would testify that, in his opinion, the defendant's subjective belief on June 6, 1985, as to the imminence and seriousness of danger was consistent with the battered woman's syndrome.

At the conclusion of the voir dire, the judge qualified the witness as an expert in the field of psychiatry. The judge, however, without further comment, excluded any testimony from the witness pertaining to the battered woman's syndrome.[1]

The defendant argues that the judge's action constituted error for a number of reasons. She contends that the subject of Dr. Weiss's testimony "was not one of common knowledge on which the jury could reach a conclusion without expert assistance." *Commonwealth* v. *Devlin,* 365 Mass. 149, 152 (1974). Further, she claims that the theory espoused by the witness had received "a general acceptance by the community of scientists involved." *Commonwealth* v. *Fatalo,* 346 Mass. 266, 269 (1963). Finally, she contends that the expert testimony was relevant in regard to the reasonableness of her belief that she was in imminent danger of death or serious injury.

The Commonwealth argues that the witness was not qualified to render an opinion on the battered woman's syndrome and that, in any event, his testimony was not relevant or material in the circumstances of this case.

"The admission of expert testimony lies largely in the discretion of the trial judge. His ruling will be reversed on appeal only

---

[1] The judge was not required to make findings or furnish an explanation when he ruled that Dr. Weiss could not testify about the battered woman's syndrome. Such findings or explanations are often helpful to an appellate court, however. See the comment in *Commonwealth* v. *United Books, Inc.,* 389 Mass. 888, 897 (1983). Also see *Commonwealth* v. *Smythe,* 23 Mass. App. Ct. 348, 355 (1987).

if it constituted an abuse of discretion or was otherwise tainted with error of law." *Commonwealth* v. *Devlin,* 365 Mass. at 152 (citations omitted). Here, the judge did not err in excluding the testimony.

The battered woman's syndrome has been described as a "series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives." *State* v. *Kelly,* 97 N.J. 178, 193 (1984). "Among the characteristics of such abused women are a decrease in self-esteem, an emotional dependence upon the dominant male and type of psychological 'learned' helplessness arising out of an inability to predict or control the violence directed against them. Numbed by a dread of imminent aggression, these women are unable to think clearly about the means of escape from this abusive family existence; and this emotional paralysis is often reinforced by their traditional beliefs about the sanctity of home and family and their false hopes that things will improve." *People* v. *Torres,* 128 Misc.2d 129, 132 (N.Y. Sup. Ct. 1985).

In those jurisdictions where it has been held to be admissible,[2] testimony in regard to the battered woman's syndrome has been offered by female defendants to bolster their claims that they killed or injured the male victim in self-defense. It is admitted to aid the jury in evaluating the reasonableness of the defendant's apprehension of serious, imminent bodily harm and to explain why the defendant remained in the relationship or the home after suffering beatings.

Whether such testimony should be admitted is a matter of first impression in the Commonwealth. Assuming, without

---

[2] The courts that have considered the question whether to allow expert opinion about the battered woman's syndrome have been divided in their result. The following jurisdictions support admission: *Ibn-Tamas* v. *United States,* 407 A.2d 626 (D.C. 1979); *Hawthorne* v. *State,* 408 So.2d 801 (Fla. Dist. Ct. App. 1982); *Smith* v. *State,* 247 Ga. 612 (1981); *State* v. *Anaya,* 438 A.2d 892 (Me. 1981); *State* v. *Kelly,* 97 N.J. 178 (1984); *People* v. *Torres,* 128 Misc.2d 129 (N.Y. Sup. Ct. 1985). The following jurisdictions have disallowed the expert evidence: *State* v. *Thomas,* 66 Ohio St.2d 518 (1981); and *Buhrle* v. *State,* 627 P.2d 1374 (Wyo. 1981).

deciding, that such testimony is admissible in Massachusetts, we hold that it was not admissible in the present case.[3]

At the time of the voir dire, the relevancy of Dr. Weiss's testimony was not clear from the state of the evidence. Nor did defense counsel fill the gap by making an offer of proof as to the forthcoming evidence. As that evidence developed, it readily became apparent that any testimony as to the battered woman's syndrome was not material to any issue in the case.

We summarize the defendant's testimony. She met the victim in September, 1984, and he moved into her apartment. Around Christmastime she asked him to leave. He reluctantly moved out in March, 1985. After the victim moved out, he would often show up on the bus that the defendant was operating and insist that she spend her lunch break with him.

The defendant also described an incident in which she was sitting in her automobile talking to a male friend while her children were at a nearby playground. The victim appeared, sat on the hood of her automobile, and challenged her friend to move him off the vehicle. The victim finally got off, and the defendant told him to leave her alone.

On June 5, 1985, the victim boarded the defendant's bus at the Dudley station. She was afraid to take him into Franklin Park. She returned to the Dudley station and had the victim removed from the bus. A half hour later he was back on her bus, and again she returned to the station, where once again he was removed from the bus.[4]

---

[3] In taking this approach we bypass the question whether the reliability of testimony concerning the battered woman's syndrome has gained general acceptance by experts in the field. In an appropriate case, a defendant should produce evidence to a judge whether the battered woman's syndrome possesses that degree of reliability to have gained general acceptance by the community of scientists involved. *Commonwealth* v. *Fatalo,* 346 Mass. at 269.

[4] The defendant's testimony as to this incident was partially corroborated by an MBTA inspector who testified for the defense. He testified that some time in June, 1985, the bus that the defendant was operating pulled into the Dudley Street station with its green lights flashing, a signal that the operator has "problems with someone or something on the bus." The defendant told the inspector that "a gentleman on the bus [was] causing . . . trouble." The inspector told the passenger that, if he did not leave the defend-

On June 6, 1985, the victim got on the bus the defendant was operating and refused to get off when it arrived at the end of the line (Forest Hills station). He said to her, "You are really going to get it." He offered her his pay check, which he had received that day, if she would just forget about their past difficulties. He wanted to take the defendant out shopping or to get her something to eat on her break. The victim then started to spit at the defendant. When she stood up he punched her in the stomach. She sounded the horn, and an MBTA starter ejected the victim from the bus. The MBTA police came, and she told them she had been assaulted. They refused to arrest the victim.

Later that same day the defendant cut short her dinner break to avoid seeing the victim. She stopped at a store to buy candy. She came out of the store and leaned into her automobile to put her bag and umbrella in the back seat. She felt a tap on the lower part of her back, turned around, and saw, to her surprise, the victim. According to the defendant, he said to her that he was going to kill her. They started to struggle. She testified, "Our heads was together and we started struggling and I felt him lifting back off of me, and I took and ran across the street." Soon thereafter, she returned to her car and drove to work. She consistently denied stabbing the victim or having a knife in her hand at the time of the struggle.

The record shows that the defendant, in asserting her innocence, never raised the issue of self-defense.[5] It follows that any evidence as to her belief that she was in imminent danger

ant alone, he would have to leave the bus. The passenger agreed to leave the defendant alone, and he was allowed to remain on the bus. About twenty-five minutes later, the same bus returned to the station with flashing lights. The defendant advised the inspector that the same man was still causing her problems and that she did not want him on the bus. The inspector ordered the passenger off the bus, and the individual eventually complied. The inspector was unable to identify the passenger as the victim, but he recalled the incident had happened the night before he heard the defendant had stabbed a person.

[5] The judge, perhaps out of caution, instructed the jury on the law of self-defense. That action does not preclude us from holding that testimony in regard to the battered woman's syndrome was irrelevant.

of death or serious injury was immaterial: Dr. Weiss's testimony as to the battered woman's syndrome was clearly irrelevant.[6]

In sum, in the circumstances of this case, testimony concerning the battered woman's syndrome was properly excluded.

*Judgment affirmed.*

---

[6] We also note that the record demonstrates that the defendant did not fit the profile of a "battered woman" as that term is defined by Dr. Walker and other social scientists. See Walker, The Battered Woman (1979); *State* v. *Kelly,* 97 N.J. at 192-196.