COMMONWEALTH *vs*. LISA BECKER GRIMSHAW. No. 90-P-925. August 22, 1991. *Homicide. Battered Woman's Syndrome. Practice, Criminal*, Argument by prosecutor, Comment by prosecutor, Sentence. *Evidence*, Sexual conduct. *Witness*, Immunity. Further appellate review granted, 411 Mass. 1104 (1991).

Charged with murder, the defendant Lisa Becker Grimshaw was convicted by a jury of manslaughter. Her appeal claims prosecutorial excess in closing argument, wrongful denial of immunity to a witness whom the de-

fense desired to call, and sentencing that amounted to cruel and unusual punishment[1] in the constitutional sense. We affirm.

Grimshaw did not deny that, in the early morning hours of June 5, 1985, she had lured her husband, the victim, to a secluded and wooded spot by the Connecticut River, where two friends of hers bludgeoned him to death. The defense was that the victim had so persistently beaten, terrorized, and sexually abused Grimshaw, that she was driven to violent retaliation in self-defense by a psychological phenomenon described as battered woman's syndrome,[2] a subcategory of post-traumatic stress disorder. For purposes of this opinion, it is not necessary to wallow in the details of the sordid brutality of Grimshaw's life. Much evidence describing that brutality came before the jury, as well as evidence that Grimshaw connived in the assault with baseball bats which proved fatal to the victim.

1. *Improper closing argument.* (a) Defense counsel objects (as she did at trial) that the prosecutor unfairly characterized the theory of the defense, which at its core was self-defense, by arguing to the jury that the defendant sought acquittal -

> "[t]otally because it's legitimate self-defense, but if you don't buy that, I was intoxicated. But if you don't buy that, then I entered only into the joint venture to the extent of hurting him, not killing him.
> "What is it? Which one is it, A, B, C, D? They wanted you to take any of them, A, B, C, or D, as long as you don't take the truth they will be satisfied."

The defendant's lawyer says she offered no such menu defense to the jury. Yet in her closing argument defense counsel put it to the jurors whether they could find that on the night of the killing "Lisa Grimshaw was not even free of the effects of days and days of drinking, beyond a reasonable doubt?" Evidence had been received through a police officer and through Grimshaw herself that she wanted the victim hurt, to stop him, but not to kill him. Considering the nature of defense counsel's own closing and the state of the evidence, the prosecutor's characterization of the defense as

---

[1]Under art. 26 of the Declaration of Rights of the Massachusetts Constitution, the reference is to cruel *or* unusual punishment. See Smith, Criminal Practice & Procedure § 2 n.6 (2d ed. 1983).

[2]Evidence of battered woman's syndrome is offered to demonstrate that the woman who has suffered beatings apprehends the threat of imminent bodily harm, even when not immediately threatened, and that it is, therefore, reasonable for the woman to act against the man who has beaten her and whom she fears will do so again. See *Commonwealth* v. *Moore*, 25 Mass. App. Ct. 63, 66-67 (1987). Whether evidence of battered woman's syndrome is admissible in Massachusetts has yet to be decided. *Commonwealth* v. *Lazarovich*, 410 Mass. 466, 473-474 (1991), and the *Moore* case, at 66-67. In jurisdictions where such evidence has been admitted, it has been for its bearing on self-defense. See note 8 in the *Lazarovich* opinion, *supra*.

having offered alternatives had a basis, and did not, in context, state a personal belief about Grimshaw's guilt.

(b) Concerning the defense's expert on battered woman's syndrome, the prosecutor argued, crudely: " You know what, she's bright enough, she's resourceful enough, she's a professional witness, you got the dough, I got the testimony, she's a classic example of a hired gun . . . ." Appellate counsel for the government has sensibly conceded those remarks were "extravagant and bordered on the excessive." Deriding an expert's testimony as bought and sold was termed "improper and unfair" in *Commonwealth v. Shelley*, 374 Mass. 466, 469-471 (1978). There are differences of degree from the *Shelley* case, not the least of which is that in *Shelley* the jury returned a verdict of murder in the first degree. The prosecutor's mocking of all the psychiatric witnesses in *Shelley* was pervasive and not founded in evidence. In the instant case, the invitation to the jury to write off the expert as a mercenary was transitory and the balance of the commentary about that expert was a critique of details of her testimony which passes the test of proper argument. As in *Shelley*, the defense did not object to the offensive remark at trial, and we, therefore, assess the impropriety on a substantial risk of a miscarriage of justice standard. Considering the powerful evidence of premeditation and efforts to conceal the crime after it had been committed, the verdict of manslaughter which the jury returned suggests they gave weight to the testimony about battered woman's syndrome of the defense expert, Dr. Walker, and had not written her off, as the prosecutor had argued they should.

(c) In argument, the prosecutor referred to an incident in which the victim had burst in on the defendant and another man. Concerning that incident the prosecutor commented, "He indicated the two of them were on the couch, what that fight must have been about. Use your common sense." This was on the margin. When evidence about the couch incident and fight was received, the trial judge had excluded evidence about the defendant's sexual conduct touching on the couch and fight incident. It is an impropriety warranting reversal to refer in argument to evidence which has been excluded. *Commonwealth v. Burke*, 373 Mass. 569, 574-575 (1977). *Commonwealth v. Mosby*, 11 Mass. App. Ct. 1, 8-9 (1980). See *Commonwealth v. Haraldstadt*, 16 Mass. App. Ct. 565, 568 (1983). The prosecutor's comment, however, was not about facts lacking support in the evidence. There was evidence of a fight involving the victim (Thomas Grimshaw) and a man, Roland Tetreault, the latter having been discovered by the former on a couch with the defendant in the defendant's apartment. The prosecutor, therefore, was asking the jury to make an inference from facts which *were* in evidence. As the underlying subject of the defendant's sexual conduct had been off limits at trial, alluding to it in closing was shabby, but not an occasion for reversal of the judgment.

(d) About the defendant, the prosecutor said that she had plied her accomplices, "one with sex, the other with alcohol, and both with a promise

of money, in order to get something done that she wanted done." The defense argues there was no basis in the evidence for that remark. There was evidence, however, that the defendant had a relationship with the older of the two men (both were in their teens), and there was abundant evidence that she and the men were often in an alcoholic haze, especially on the fatal night. As to money, there was evidence that the defendant had discussed with the men that there might be life insurance proceeds to be collected from a policy owned by her husband.

(e) There is basis in the record for the prosecutor describing the witness Tetreault as having said that the defendant told him, "I'm thinking about doing something crazy towards Tommy." Nor was it improper to argue that the evidence justified an inference that one of the assailants had been provided with a picture of the victim before the attack.

2. *Denial of the defense motion for use immunity.* From the defendant's mother, Shirley Becker, the defense hoped to adduce testimony that she, not her daughter, had dangled the prospect of life insurance proceeds to be realized from the victim's death. Becker declined to testify on the basis that she might incriminate herself. The trial judge declined a defense motion to grant Becker immunity. There was no error. Although not utterly precluded should the right combination of unique circumstances arise, the notion of a general doctrine of judicial immunity for defense witnesses has been rejected in Massachusetts. *Commonwealth* v. *Curtis,* 388 Mass. 637, 643-646 (1983). *Commonwealth* v. *Doherty,* 394 Mass. 341, 343-345 (1985). The exculpatory impact of Becker's testimony would have been marginal in light of testimony from other witnesses that the defendant herself had been around when life insurance was discussed. These are not unique circumstances of the sort which *Curtis* held in reserve. In retrospect, the jury did not take the life insurance testimony seriously as they did not return a verdict of a specific intent crime.

3. *The sentence.* There is no gainsaying that the sentence which the trial judge imposed — fifteen to twenty years in State prison — is at the higher end of the statutory scale for manslaughter. The sentence is, however, not more than the maximum authorized by statute, G. L. c. 265, § 13. An appellate court's function in regard to sentences is to review them for errors of law or for unconstitutionality (because cruel and unusual) of the statutory punishment. It is the defendant's difficulty that she is bound to concede that the statutory maximum permitted by G. L. c. 265, § 13, is not itself so disproportionate to the offense as to raise constitutional questions, and she is remitted to arguing that the judge acted with undue severity in exercising his discretion. That question, however, is for the Appellate Division of the Superior Court, G. L. c. 278, §§ 28A-28C, which heard an appeal of the sentence and denied relief. There are no overtones of vindictiveness on the part of the judge, nor does the defendant suggest that there were. In the absence of error of law or constitutional infirmity, we do not review the sentence. *Commonwealth* v. *Longval,* 378 Mass. 246,

252-253 (1979). *Commonwealth* v. *Sanchez*, 405 Mass. 369, 379, 380 (1989). See *Commonwealth* v. *Tart*, 408 Mass. 249, 267 (1990).

*Judgment affirmed.*

*Nancy Gertner* (*Meaghan Barrett* with her) for the defendant.

*Ariane D. Vuono*, Special Assistant District Attorney, for the Commonwealth.