COMMONWEALTH *vs.* LISA BECKER GRIMSHAW.

Hampden. February 5, 1992. - April 22, 1992.

Present: LIACOS. C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Battered Woman Syndrome. Practice, Criminal*, Argument by prosecutor, Comment by prosecutor, Sentence. *Witness*, Immunity.

In a murder case, the several statements in the prosecutor's closing argument that the defendant contended on appeal were improper constituted proper comments on or reasonable inferences from the evidence, and an improper reference to excluded evidence was harmless error in the circumstances. [506-511] LIACOS, C.J., concurring.

In a criminal case the prosecutor's improper reference to the defendant's expert witness as a "hired gun" created no substantial risk of a miscarriage of justice. [511]

In a murder case there was no error in the judge's denial of the defendant's request for immunity for a prospective witness where the witness was a potential target of prosecution in the case and there were no "unique circumstances" that would require a grant of immunity. [511-512]

No reason appeared for this court to consider a criminal defendant's claim that her sentence on a manslaughter conviction was unduly severe. [512-513]

INDICTMENT found and returned in the Superior Court Department on June 19, 1985.

The case was tried before *John F. Murphy, Jr.*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Nancy Gertner* for the defendant.

*Ariane D. Vuono*, Special Assistant District Attorney, for the Commonwealth.

NOLAN, J. A jury convicted the defendant of manslaughter in connection with the death of her husband, and she was sentenced a term of from fifteen to twenty years. The Ap-

peals Court affirmed the defendant's conviction. 31 Mass. App. Ct. 917, 918 (1991). We granted the defendant's application for further appellate review. The defendant makes three arguments on appeal: (1) the trial judge erred in refusing to grant a mistrial or to give specific curative instructions as a result of several alleged improprieties in the prosecutor's closing argument; (2) the judge's refusal to grant immunity to a prospective witness violated the defendant's right to due process under the Fourteenth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution, as well as her right to compulsory process under the Federal and State Constitutions; and (3) the sentence imposed by the judge violated the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights. We affirm.

It is undisputed that the defendant, in the early morning hours of June 5, 1985, lured the victim, her husband, to a secluded and wooded area where two of her friends bludgeoned the victim to death with baseball bats. The defense was that the defendant suffered from battered woman syndrome, a subclass of posttraumatic stress disorder, which allegedly was caused by a history of psychological, physical, and sexual abuse by several men, including the victim. The defendant contended that this condition prompted her to perceive that she was in imminent danger of grievous bodily harm from the victim, she had no way to escape it, and she had no choice but to defend herself.[1]

1. *The prosecutor's closing argument.* Defense counsel objected at trial to several statements in the prosecutor's closing argument which the defendant contends on appeal were

---

[1] The issue whether the judge properly allowed the admission of expert testimony on the battered woman syndrome is not before this court. Whether such evidence is admissible in Massachusetts has yet to be decided. See *Commonwealth* v. *Lazarovich*, 410 Mass. 466, 473 (1991); *Commonwealth* v. *Moore*, 25 Mass. App. Ct. 63, 66 (1987). Therefore, we take no position on the matter at this time.

prejudicial and not cured by the judge's general instructions.[2] These statements include: the prosecutor's alleged mischaracterization of the defense; the prosecutor's reference to excluded testimony; and the prosecutor's alleged misstatements concerning evidence. Additionally, although not objected to at trial, the defendant also argues on appeal that another alleged misstatement by the prosecutor and his description of the defendant's expert witness created a substantial risk of a miscarriage of justice. We discuss each alleged impropriety below.

a. *Mischaracterization of the defense.* In his closing argument, the prosecutor characterized the defense as follows: "[K]eep in mind what they are saying to you. I have the right to be acquitted totally because it's legitimate self-defense, but if you don't buy that, I was intoxicated. But if you don't buy that; then I entered only into the joint venture to the extent of hurting [the victim], not killing him. What is it? Which one is it, A, B, C, D? They wanted [you] to take any of them, A, B, C or D, as long as you don't take the truth, as long as you don't take the truth they will be satisfied." The defendant contends that this statement mischaracterized the defense, and that the prosecutor's comparison of this alleged defense with "the truth" implied that the prosecutor knew the truth and improperly injected his personal belief into his closing argument.

"If he speaks with propriety on matters on the record before the jury, a prosecutor may properly comment on the trial tactics of the defence and on evidence developed or promised by the defence." *Commonwealth* v. *Dunker*, 363 Mass. 792, 800 (1973). See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 272 (1982); *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 401 (1975). Defense counsel, in her closing argument, asked the jurors several times to consider the effect of intoxication on the defendant at the time of the murder, and defense counsel introduced evidence from which

---

[2]The judge instructed the jury that "[t]he closing arguments you heard here this morning are not evidence."

the jury could infer that the defendant was intoxicated at that time. The defendant also stated on more than one occasion in her testimony that she only wanted to hurt the victim. In these circumstances, the prosecutor's suggestion that the defendant presented alternate theories justifying her innocence is supported by the record, and there was no error.

Regarding the prosecutor's use of "the truth" in comparison with the various defense theories, the prosecutor interjected no extraneous material or belief, and, at most, he expressed his view of the strength of the evidence. This argument was proper. See *Commonwealth* v. *Smith*, 387 Mass. 900, 906-907 (1983). Cf. *Commonwealth* v. *De Christoforo*, 360 Mass. 531, 537 (1971) ("I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder").

b. *The reference to excluded evidence.* Although the judge sustained the defendant's objections to the prosecutor's attempts to inquire into the defendant's possible sexual relationship with one particular witness, Roland Tetreault, the prosecutor argued as follows in his closing argument: "He [Roland Tetreault] told you about that incident in November, didn't deny [the victim] broke in. Use your common sense to draw the inference. He indicated the two of them were on the couch, what that fight must. have been about. Use your common sense." These statements by the prosecutor were improper. A prosecutor is barred from referring in closing argument to matter that has been excluded from evidence, *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977), and a prosecutor should also refrain from inviting an inference from the jury about the same excluded subject matter.

Even though these statements were improper, we do not reverse because we are convinced that this error was harmless. See *Commonwealth* v. *Bradshaw*, *supra* at 274 (reference to excluded evidence does not necessarily constitute prejudice warranting a reversal). "The essential question is whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdicts." *Commonwealth* v. *Perrot*, 407

Mass. 539, 549 (1990). There was already evidence introduced from which the jury could have inferred a relationship between the defendant and Tetreault.[3] There was also evidence that the defendant had had sexual relationships with two other men around the time of the murder.[4] In the circumstances of this case, there is no risk that the prosecutor's statements had an effect on the jury or contributed to their verdict.

c. *Misstatements of testimony.* There are three instances where the defendant contends that the prosecutor misstated testimony in his closing argument. We conclude that there was no error in any of these statements.

The first alleged misstatement concerns the following statement by the prosecutor: "You might sit back and say what type of manipulative, conniving human being is [the prosecutor] suggesting she is? The same type of manipulative and conniving human being at twenty-three or twenty-four years old that would take a nineteen-year-old street kid and a sixteen-year-old street kid and ply them, one with sex, the other with alcohol, and both with a promise of money, in order to get something done that she wanted done." The defendant contends that this argument was improper because there was no evidence that the defendant plied the sixteen year old youth with alcohol on the evening of the murder. A prosecutor may, however, in closing argument, analyze the evidence and suggest what reasonable inferences the jury should draw from that evidence. *Commonwealth* v. *Colon-Cruz,* 408 Mass. 533, 553 (1990). *Commonwealth* v. *Richenburg,* 401 Mass. 663, 675 (1988). *Commonwealth* v. *Lamrini,* 392 Mass. 427, 431 (1984). There was evidence of the age of these youths, that the defendant had a sexual relationship with one of them, and that the defendant had discussed potential proceeds of the victim's life insurance policy

---

[3] The defendant and Tetreault lived together for several months during 1984 and 1985.

[4] These two men were Michael Bruyette, one of the youths who murdered the victim, and Darryl Fredette, the father of the defendant's first child and one of her alleged batterers.

with them. There was also evidence that the defendant and the youths drank alcohol at the defendant's home frequently, including the night of the murder. In these circumstances, the prosecutor's statement was a reasonable inference from the evidence.

The second alleged misstatement involved the prosecutor's argument suggesting to the jury that they infer that the defendant had given a photograph of the victim to one of the assailants, Michael Bruyette, before the night of the murder as part of her preparations for the murder. "In closing argument, counsel may argue the evidence and the fair inferences which can be drawn from the evidence." *Commonwealth* v. *Hoffer*, 375 Mass. 369, 378 (1978). "Counsel may also attempt to assist the jury in their task of analyzing, evaluating, and applying evidence. Such assistance includes suggestions by counsel as to what conclusion the jury should draw from the evidence." *Commonwealth* v. *Ferreira*, 381 Mass. 306, 316 (1980). The defendant argues that the evidence does not support the prosecutor's inference, but we believe that the inference is a fair one.

While in police custody on June 6, 1985, Bruyette turned over to the police a photograph that had been cut and altered to depict only the victim's likeness. The original photograph had included the defendant's likeness as well. Bruyette probably received the picture from either the defendant or the victim, but Bruyette did not know the victim. The defendant argues that Bruyette could have obtained the photograph from the victim's wallet which Bruyette took from the victim on the night of the murder. There was evidence at trial, however, that Bruyette disposed of the contents of the victim's wallet in a trash dumpster shortly after the murder. In these circumstances, it was proper for the prosecutor to suggest to the jury that they infer that the defendant gave Bruyette a photograph of the victim prior to the night of the murder.

The final alleged misstatement, not objected to at trial, involves this statement by the prosecutor: "Roland Tetreault says, you know, she made a statement to me that I'm thinking about doing something crazy towards [the victim]."

While the defendant denied making this statement to Tetreault, and Tetreault himself, at one point in his testimony, characterized the defendant's statement as "thinking about doing something about" her relationship with the victim, Tetreault later testified that he had previously told a detective that the defendant had stated to him, "I'm thinking about doing something crazy about [the victim]." Consequently, there was no misstatement by the prosecutor.

d. *The description of the expert witness.* The defendant argues that the following description of the defendant's expert witness was improper: "[S]he's a professional witness, you got the dough, I got the testimony, she's a classic example of a hired gun." This court specifically addressed the use of "hired gun" to describe an expert witness in *Commonwealth* v. *O'Brien*, 377 Mass. 772 (1979).

The fact that the expert witness was retained by the defense would have been an appropriate subject of argument to the jury. See *id.* at 778. Additionally, though defense counsel specifically objected in *O'Brien*, no objection was raised in this case. See *id.* at 777. While we disapprove of this argument, there is no substantial risk of a miscarriage of justice. See *id.*

2. *Immunity for a prospective defense witness.* The defendant next contends that she should have been able to obtain a grant of use immunity for a prospective witness, her mother, Shirley Becker. The defendant argues that Becker's testimony was essential because Becker would have testified that she, not the defendant, discussed the victim's insurance policy with the two youths who killed the victim. According to the defendant, this could have undermined the Commonwealth's theory that the defendant hired two assassins whom she promised to pay with the proceeds of a lapsed insurance policy. Additionally, the defendant had stated on several occasions prior to trial that she had discussed the insurance policy with the youths, but at trial she testified that she made those prior statements only to protect her mother. The defendant contends that Becker's testimony would have corroborated that aspect of the defendant's testimony.

The judge denied the defendant's pretrial motion and her motion during trial concerning immunity for Becker. On appeal, the defendant makes two arguments: that there is no public interest in preserving the prosecutor's discretion to prosecute Becker, and that the novel circumstances of the case constituted "unique circumstances" that required a grant of immunity. By her first argument, the defendant would shift the onus of proof onto the Commonwealth in witness immunity questions. This court has already held that, barring unique circumstances, "any inquiry into the question of immunity is foreclosed if the prospective witness is an actual or potential target of prosecution." *Commonwealth* v. *Doherty*, 394 Mass. 341, 345 (1985). The prosecutor's motive in opposing immunity revolved around the potential prosecution of Becker, if and when reliable or corroborative evidence implicating her in the conspiracy became available, and the judge found no suggestion by the defendant of any prosecutorial misconduct or any ulterior motive in the prosecutor's opposition to immunity. There is no merit in the defendant's first argument.

Similarly, there is no merit in the defendant's argument concerning the unique circumstances of this case. Although this court has stated that "in some unique circumstances . . . due process may require the granting by a judge of a limited form of immunity," *Commonwealth* v. *Curtis*, 388 Mass. 637, 646 (1983), we have never defined what those "unique circumstances" may entail. That this case involved a battered woman syndrome defense, which the jury probably accepted in the light of their verdict of manslaughter, does not create a unique circumstance of the sort that existed in *Government of the V.I.* v. *Smith*, 615 F.2d 964 (3d Cir. 1980), where the United States Attorney, who lacked jurisdiction to prosecute the witness, refused to consent to immunity. *Id.* at 967, 969. See *Commonwealth* v. *Curtis*, *supra* at 644-645. Consequently, there was no error in the judge's denial of the defendant's request for immunity for Becker.

3. *The sentence.* The defendant's final argument is that the length of the sentence imposed, fifteen to twenty years, con-

stitutes cruel or unusual punishment. The defendant appealed from her sentence to the Appellate Division of the Superior Court which, in accordance with G. L. c. 278, § 28B (1990 ed.), has final authority for review of sentences, and, pursuant to that authority, dismissed her appeal. While this court should review sentences for errors of law or constitutional violations, we should not do so merely for matters concerning alleged disparities in sentencing, which is the major thrust of the defendant's argument. See *Commonwealth* v. *Longval*, 378 Mass. 246, 252-253 (1979). The sentence imposed was within the maximum authorized by the Legislature, see G. L. c. 265, § 13 (1990 ed.), and we find no argument of constitutional dimension within the defendant's claim that the judge acted with undue severity.

*Judgment affirmed.*

LIACOS, C.J. (concurring). I write separately to emphasize the impropriety of the prosecutor's reference in his closing argument to excluded evidence and to expand on the court's harmless error analysis regarding this reference. In his argument, the prosecutor stated that "[Roland Tetreault] told you about that incident in November, didn't deny [the victim] broke in. Use your common sense to draw the inference. He indicated the two of them were on the couch, what that fight must have been about. Use your common sense." As the court's opinion correctly points out, the statements were improper because the trial judge had upheld the defendant's objection to questions regarding any such sexual activity. Additionally, the statements were improper because the prosecutor, during direct examination of Tetreault, specifically assured both the judge and defense counsel at side bar that he did not "intend to get into [the defendant's sexual activity with Tetreault]." In light of this comment, the prosecutor's subsequent attempt to raise the sexual activity issue in his closing argument borders on deception. Finally, the prosecutor's statements were improper because they do not

conform to the testimony at trial. Contrary to the prosecutor's statement to the jury, Tetreault's testimony does not indicate in any way that the defendant or Tetreault was "on the couch." Tetreault's testimony reveals only that the defendant and Tetreault were in the defendant's apartment at the time of the attack.[1] The prosecutor's unfounded reference to a traditionally compromising situation served only to encourage the jury to draw an inference of sexual activity that was not warranted by the evidence presented at trial.

It is clear that the prosecutor's statements invited the jury to infer that the victim's November 21, 1984, attack was caused not by the victim's abusive nature toward his wife but by the defendant's extramarital sexual activity with Roland Tetreault. In my view, such an argument creates a dangerous risk of insinuating to jurors that they properly can conclude that the victim was justified in beating his wife for her infidelity. In order to avoid this risk, this type of evidence should be admitted rarely and only in limited circumstances, (e.g., pertaining to the defendant's state of mind), and only when accompanied by stringent limiting instructions from the trial judge. Unfortunately, the prosecutor's improper introduction of this issue during his closing argument to the jury effectively prevented the trial judge from exercising these controls.

Notwithstanding the absence of appropriate cautionary measures in the present case, I concur with the court that the prosecutor's statements constituted harmless error. The harmless error analysis provided in the court's opinion, however, does not consider the full range of potential error created by the prosecutor's statements. The court concludes that the error was harmless because evidence was admitted at trial from which the jury could conclude that the defendant had had sexual relations with Tetreault and two other men near the time of the homicide. However, the impact of the

---

[1]Similarly, the defendant's testimony regarding the November 21, 1984, attack does not describe either herself or Tetreault as being "on the couch."

prosecutor's statements extends beyond the defendant's history of extramarital sexual activity.

A central pillar of the defendant's case was that at the time of the homicide she suffered from battered woman syndrome, a posttraumatic stress disorder allegedly caused by the victim's constant and habitual abuse. Evidence of the victim's attack on November 21, 1984, played a crucial role in the defendant's attempts to establish that the victim regularly abused her, thereby causing her to suffer from battered woman syndrome. In the words of the defendant's expert witness on battered woman syndrome, this attack was "*the significant incident*, one of the worse [*sic*] incidents that occurred in November of 1984 that pushed [the defendant's relationship with the victim] over the danger level" (emphasis added).

The prosecutor's improper and unfounded statements allowed the jury to infer that the November 21 attack was not an example of the victim's ongoing abuse, as was suggested by the defendant, but was merely an isolated incident caused by the victim's rage at witnessing his wife's infidelity. Such an inference certainly would have harmed the defendant's attempts to establish that she suffered from battered woman syndrome due to chronic abuse. Accordingly, the potential impact of this inference should have been considered by the court in assessing the harm caused by the prosecutor's error. In the circumstances of the present case, however, it appears that the error was rendered harmless because the jury's verdict of manslaughter suggests that the jury accepted the defendant's claim that she suffered from battered woman syndrome at the time of the homicide. In short, the good sense of the jurors saved a prosecutor from the consequences of his own folly. Accordingly, I concur.