COMMONWEALTH vs. BERNARD A. DOWDY, JR.

No. 93-P-173.

Suffolk. October 21, 1993. - May 19, 1994.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Threshold
   police inquiry, Plain view. *Practice, Criminal*, Argument by prosecutor,
   Instructions to jury.

At the trial of an indictment for trafficking in cocaine, the judge correctly
   denied the defendant's motion to suppress the cocaine, where police of-
   ficers' actions did not amount to a stop or a search inasmuch as the
   defendant was walking in a public place holding a package in his hand
   that was clearly visible and recognizable to the officers as contraband.
   [497-498]
At the trial of an indictment for trafficking in cocaine, the prosecutor's
   reference to the defendant's intention, when the defendant had denied
   knowing that the package he carried contained cocaine, went beyond
   the evidence; however, the misstatement did not warrant grant of a new
   trial where it was unlikely the jury were misled, in light of the evidence
   and the judge's unobjected-to instructions. [498-501] BROWN, J.,
   dissenting.

INDICTMENT found and returned in the Superior Court De-
partment on May 4, 1989.

A pretrial motion to suppress evidence was heard by *John
J. Irwin, Jr.*, J., and the case was tried before him.

*William M. Leonard* for the defendant.

*Jane Woodbury*, Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. The defendant was indicted for trafficking
on a single occasion in cocaine of a weight over twenty-eight
grams. After a three-day jury trial, a jury found the defend-
ant guilty of the crime charged in the indictment against
him. Before trial the defendant moved to suppress the co-
caine found in his possession at the time of his arrest. The

appeal centers on the denial of this motion and the defend-
ant's claim that improper comments made by the prosecutor
in her closing speech to the jury warrant reversal of the judg-
ment of conviction. We affirm.

1. *Motion to suppress.* We draw the essential facts from
the judge's findings. Informed by a police dispatcher on
March 23, 1989, that shots had been fired in the vicinity of
Brunswick Street and Blue Hill Avenue, a part of the
Roxbury section of Boston, a Boston police officer directed
his partner to drive their marked cruiser toward Intervale
Street. En route, they received a second radio message from
officers on the scene confirming that two or three African-
American males were the shooters and that they were walk-
ing down Intervale Street towards Columbia Road garbed in
"dark clothing."

So advised, the officers headed in the direction of Intervale
Street, an area known to them as plagued by the "Intervale
gang" — the scene of much violence and drug dealing activ-
ity. Within three to four minutes, they observed from a dis-
tance of about one-half mile (it was still daylight), two per-
sons walking toward them. As they drew closer, the officers
noticed that both males wore dark clothing and were walking
through the King School yard from the Intervale Street side
headed toward Lawrence Avenue. One of the two men was
the defendant. This location was less than three-quarters of a
mile from where the gunfire had been reported.

The officers parked the cruiser on Lawrence Avenue, got
out, and approached the two men as they emerged from the
school yard toward the street. An officer began talking with
the defendant while his partner spoke to the other person,
who was considerably older than the eighteen year old de-
fendant. The officer, who had been assigned to the area for
several years, did not relax his gaze on the defendant when
he casually asked him, "What's up? Did you hear any
shots?" The two men had been walking about four to five
feet apart so that the officer initially thought they had been
together. There was no reply from either man.

The officer then noticed that the defendant was clad in a black leather jacket, white shirt, and black sweatpants. His attention was focused on the defendant's hands (to ascertain whether the defendant was armed). He noted the right hand was tightly clasped over a partially opened package. The experienced officer recognized the package as one commonly used in the drug trade. The defendant tried to palm the package away from the officer's view, but it was too late. Protruding from an open end of the brown, taped package, the officer noticed an off-white substance, which he correctly thought to be cocaine. When the officer asked the defendant what he had in his hand, the defendant, at first, was unresponsive. Then he stated that he found the package in the school yard and thought he should hold onto it. The officer relieved the defendant of the item without any resistance.[1] The defendant was arrested, and the other person left the scene. After the defendant's arrest, he told the officer that he had no connection to the other person involved in their encounter. The package, it turned out, from later analysis, contained 81.7 grams of cocaine.

This case is governed in material respects by *Commonwealth* v. *Doulette*, 414 Mass. 653 (1993), where the Supreme Judicial Court held that "[t]he Fourth Amendment [to the Federal Constitution] does not prohibit a police officer who is in a public place from taking appropriate action when the officer sees evidence of a crime in plain view from a spot where the officer has a right to be." *Id.* at 657. In large part, the rule in *Doulette* is intended to avoid the complications of determining whether the character of the encounter between police officers and suspects constitutes a "stop" in the *Terry* sense of the term. *Id.* at 655. Applying the logic of *Doulette* to this case, the officers' actions in this matter did not amount to a stop or a search.

---

[1] We reject the defendant's argument that the judge ignored the defendant's affidavit in denying the motion to suppress; in crediting the officer's testimony, the judge implicitly rejected the defendant's version of the incident.

In the instant case, "there [was] no search at all because of the plain view character of the situation, and this means that the [officer's] observation is lawful without the necessity of establishing either pre-existing probable cause or . . . [any other] of the traditional exceptions to the warrant requirement." 1 LaFave, Search & Seizure § 2.2(a), at 323 (2d ed. 1987). Here, the judge permissibly found that the contents of the package were clearly visible as the officer approached the defendant. See *Commonwealth* v. *Irwin*, 391 Mass. 765, 768-770 (1984). Contraband may be seized by the police without a warrant when it is in plain view and the police are in a place where they have a right to be. *Commonwealth* v. *Marmolejos*, 35 Mass. App. Ct. 1, 3 n.3 (1993), citing *Sullivan* v. *District Ct. of New Hampshire*, 384 Mass. 736, 742-743 (1981). Contrast *Commonwealth* v. *Ferguson*, 410 Mass. 611, 615 (1991) (officer saw narcotics for first time only after he removed plastic bag and its contents from defendant's jacket; defendant was not in custody). In broad daylight the defendant in the case before us walked through a school yard, open to and used by the public, grasping a partially open package of cocaine visible enough to enable a police officer to identify the contents as cocaine. In short, the officer's observation of the defendant's right hand was not a search within the meaning of the Fourth Amendment. *Texas* v. *Brown*, 460 U.S. 730, 740 (1983). There was no error in the denial of the defendant's motion to suppress.

2. *Prosecutor's closing argument.* The defendant testified on direct examination that he did not know what was contained in the package he was carrying and that he was to deliver the packet to his cousin. As the prosecutor was winding up a lengthy cross-examination of the defendant, she asked him if he intended to use the items contained in the package. That portion of the cross-examination is set forth in the margin.[2]

---

[2]THE PROSECUTOR: "Sir, would it be fair to say that the item I'm showing you that's marked as Exhibit 1 is the same tape that's contained on the package that you had on March 23rd, 1989?"
THE DEFENDANT: "Yes."

This line of inquiry, apparently, was an attempt by the prosecutor to persuade the jury that the defendant possessed the cocaine not for his personal use but for distribution. But the defendant previously had testified that he did not know what was contained in the package. Taken out of context, however, the assumption implicit in the questions, no matter how they were answered, was that the defendant knew what was contained in the package. Defense counsel objected to the misleading nature of the prosecutor's questioning.

The defendant does not challenge the jury's consideration of this testimony on appeal. Rather, he contends that in referring to the same testimony in her closing speech to the jury the prosecutor unfairly suggested, by calling the jury's attention to the defendant's negative response to the questions, that the defendant admitted in his testimony that he knew what was in the package and that he had procured the drugs for distribution.

In her closing argument, following a reference to the amount of cocaine seized, coupled with an argument that this pointed to an intent that "the defendant intended to distribute the cocaine and it was not for personal use," the prosecutor added the following. "And, if you also look at the defendant's testimony, he indicated he did not intend to use that cocaine himself. His intention was to pass it off to some-

---

THE PROSECUTOR: "And, sir, would it also be fair to say that items contained in that package that's been marked as Exhibit 3 that you did not inten[d] to use that yourself?"

THE DEFENDANT: "No."

THE PROSECUTOR: "And, when I say 'use that,' sir, I mean to smoke it."

THE DEFENDANT: "No."

THE PROSECUTOR: "When I say 'use it,' I mean inject it into your body."

THE DEFENDANT: "No."

THE DEFENSE COUNSEL: "Your Honor, I'm going to object. He has testified he didn't know what was in that package."

THE JUDGE: "Do you want to put your next question?"

THE PROSECUTOR: "And, sir, it's your testimony that on March 23rd you were going to hand this package to somebody else; isn't that true?"

THE DEFENDANT: "Yes."

body else." There was no immediate objection by defense counsel. About a minute later, the prosecutor returned to the subject. "The defendant tells you, himself, he did not intend to use it." At this, defense counsel objected. The following exchange occurred at the side bar.

> THE DEFENSE COUNSEL: "This is the second time she said he intended. His testimony is he didn't know what it was. I mean, how do we get from that that he said he didn't intend to use it? He didn't know what it was in the first place."

> THE PROSECUTOR: "There was a specific question by myself that I asked him, whether he intended to use it."

> THE DEFENSE COUNSEL: "I objected to it. I mean, you know, this is unfair argument. He said he didn't know what it is."

> THE JUDGE: "And what she's arguing is that he did know what it was. Isn't that about it?

> THE DEFENSE COUNSEL: "No. She's arguing that he admitted somehow that he knew what it was."

> THE JUDGE: "Well I'm going to instruct the jury carefully that it isn't either one of your views as what some witness testified to that counts; it's what their memory is of what a witness testified to. I'm going to instruct them very carefully on that, and your objection is noted."

> THE DEFENSE COUNSEL: "Thank you."

We agree with the defendant's contention: the prosecutor's reference to the defendant's intention went beyond the evidence. To some extent at least the comment was an unfair strike at the defendant's testimony. See *Commonwealth* v. *Cobb*, 26 Mass. App. Ct. 283, 287 (1988). Further, the pros-

ecutor's error was not limited to "collateral issues" in that the prosecutor had the defendant *admitting* facts that would have justified a conviction for trafficking. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987).

The prosecutor's misstep was not, however, outrageous and, standing alone, does not warrant reversal of the judgment of conviction. This is not a case in which the prosecutor in closing argument referred to *excluded* evidence — the judge made no such ruling (see note 2, *supra*). Compare and contrast *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977); *Commonwealth* v. *Grimshaw*, 31 Mass. App. Ct. 917, 919 (1991), *S.C.*, 412 Mass. 505, 508-509 (1992). Further, we consider it unlikely that the jury were misled by the prosecutor's argument or that they did not take into account the defendant's denial that he knew what was in the package. Cf. *Commonwealth* v. *Grimshaw, supra*.

The prosecutor was entitled to argue that the defendant's possession of the cocaine was coupled with an intention to distribute, rather than confined to using the cocaine himself — a lesser included offense. The judge had indicated (in a charge conference) he would permit the jury to consider the lesser-included offense. It would have been preferable to tell the jury that, in the event they reached the conclusion that the defendant knew that he possessed such a large amount of cocaine, they could, based on all the evidence, convict him of the distribution charge. Last, as he promised he would, the judge repeatedly instructed the jury that closing arguments are not evidence and clearly informed the jury that it was their memory of the testimony — not the lawyers' — that controlled their decision. See *Commonwealth* v. *Kozec*, 399 Mass. at 522-523; *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. 945, 946 (1992). The defendant did not express dissatisfaction with the instructions.

*Judgment affirmed.*

BROWN, J. (dissenting). "It is long past time for prosecutors to prepare their closing arguments carefully in order to

avoid the possibility of reversals of convictions because of prosecutorial error." *Commonwealth* v. *O'Brien*, 377 Mass. 772, 778 (1979). See *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 541 (1991), and cases cited. There has been little improvement in the quality and propriety of closing arguments since I became a member of this court in 1976. In that very same year, Justice Braucher in *Commonwealth* v. *Redmond*, 370 Mass. 591, 597 (1976), cautioned against "sail[ing] unnecessarily close to the wind," and since then a plethora of opinions have rained down upon both defense counsel and prosecutor, warning, threatening, and admonishing. See, e.g., *Commonwealth* v. *Kelly*, 417 Mass. 266, 270-272 (1994), decided only two months ago, where the Supreme Judicial Court disagreed with this court's conclusion that the prosecutor's closing remarks were proper.[1] For a similar outcome in a case decided by this court very recently, see *Commonwealth* v. *Loguidice, post* 940 (1994).

Nothing seems to get through. [2] Why cannot prosecutors get it right?[3] Why should appellate courts continue to reiterate that familiar refrain:

---

[1] In another recent case, *Commonwealth* v. *Wallace*, 417 Mass. 126, 133 (1994), the Supreme Judicial Court did not reverse, but was obliged to say once again that "[t]he remark, although better left unsaid, does not require reversal."

[2] It previously has been suggested that "in order to cure the particular type of ill found in this case a formal disciplinary procedure should be established." *Commonwealth* v. *McLeod*, 30 Mass. at 541 & n.11.

[3] For a partial laundry list of the usual explanations served up by the Commonwealth over the last two decades, we offer this language from a 1977 opinion reversing a criminal conviction because of an improper closing argument:

> "The Commonwealth does not deny the impropriety of these remarks. Instead, it argues that (1) the errors were not adequately preserved for appellate review; (2) the prosecution was merely attempting to 'fight fire with fire'; (3) the prejudicial effect of these errors was diminished substantially by the judge's curative instructions; and (4) the evidence of guilt was overwhelming; therefore, the errors were harmless."

*Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977).

"We remind prosecutors again that '[a]dvance prepara-
tion would eliminate from our consideration most as-
pects of closing arguments constantly being urged as
improper.' [*Commonwealth* v. *Smith*, 387 Mass. 900,
903 (1983)], quoting *Commonwealth* v. *Haas*, 373
Mass. 545, 557 (1977)."

*Commonwealth* v. *Phoenix*, 409 Mass. 408, 428 (1991).

It is now my view that careless and flagrant disregard of
the "rules of the road" and an obvious lack of preparation
mandate summary reversal and a new trial. Appellate courts
are being forced to this position as a last resort because this
deplorable state of advocacy is today precisely as it was in
1979 when this court plaintively opined that "[t]here still ap-
pears no other way to get the point across to those prosecu-
tors who do not prepare their closing arguments with care."
*Commonwealth* v. *Ryan*, 8 Mass. App. Ct. 941 (1979), and
cases cited. It cannot be gainsaid that "[t]houghtful and
careful preparation would have saved the Commonwealth
and this court much time and expense." *Commonwealth* v.
*McLeod*, 30 Mass. App. Ct. at 541. I again remind prosecu-
tors that "[p]rejudicial excesses in argument offered on be-
half of the Commonwealth constitute *prosecutorial error*, not
judicial error" (emphasis in original). *Commonwealth* v.
*Earltop*, 372 Mass. 199, 206 (1977) (Hennessey, C.J., con-
curring). Until the public expresses sufficient outrage at this
tremendous waste of funds and judicial resources, these im-
proper arguments will continue. As for me, I will no longer
sit idly by while the government's attorneys continue to flout
the standards of our profession as well as the mandates of
the Supreme Judicial Court.[4] In sum, I would reverse, pure
and simple, because a prosecutor again has exceeded the
bounds of proper argument.

---

[4]If this carelessness or ineptitude continues, perhaps, analogous to *Avery*
v. *Steele*, 414 Mass. 450 (1993), a trial prosecutor whose misconduct is
flagrant should be required personally to reimburse the Commonwealth for
the costs of any resultant retrial.

A final comment is necessary. I am obliged to scold the Commonwealth's trial attorney for the unfair manner in which she attempted "to communicate [adverse] impressions by innuendo through questions which are answered in the negative." *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975). Cf. *Commonwealth* v. *Fordham*, 417 Mass. 10, 20-21 (1994). I am otherwise in substantial agreement with the majority.