Neel, J.
On June 9, 1993, defendant Johnny Gonzalez Velez[1] was convicted of two counts of rape. Velez now moves for a new trial under Mass.R.Crim.P 30(b), alleging that prosecutorial misconduct resulted in a miscarriage of justice.[2] The motion was heard on May 18, 1994. For the following reasons, the motion is allowed.
BACKGROUND
Evidence was presented at trial from which the jury could have found the following facts. In January 1992, Diana Figueroa and Velez had known each other for six or seven years (TR 6/8-43). Velez had been dating Figueroa’s cousin, Elizabeth Gonzales, for approximately seven years. (TR 6/8-40-42.)
At trial, Figueroa and Velez gave conflicting testimony as to the events of January 18, 1992. Velez testified that on that date he had plans to go dancing with his girlfriend’s sister, Mercedes Sanchez. (TR 6/8-57.) When Velez arrived at Mercedes’s house, it appeared that she was not at home. (TR 6/8-58.) Velez knew that Mercedes and Figueroa were friends as well as cousins, so he went around the block to Figueroa’s house to see if Mercedes was there. (TR 6/8-58-59.) Figueroa answered Velez’s knock on her door, told him that Mercedes was not there, and invited him in. (TR 6/8-58.) They talked for a while on the couch, and then began kissing. (TR 6/8-61.) After approximately twenty minutes, Velez asked for a drink of water and they went into the kitchen. (TR 6/8-62.) In the kitchen they began kissing again, and eventually had sex standing up. (TR 6/8-62.)
Figueroa testified that on the night of January 18, 1992, Velez came to her house and told her that “he wanted to have intercourse.” (TR 6/3-176-177.) She told him no and asked him to leave. (TR 6/3-177-178.) He asked for a glass of water, and when they went into the kitchen he pushed her up against the wall and raped her with his lingers and his penis. (TR 6/3-179, 181-82, 183-84.) After Velez left, Figueroa, with her three-year-old daughter, walked a couple of miles to *435 her sister Edna’s. (TR 6/4-31.) She stayed with her sister for a month. (TR 6/4-9.) She did not tell anyone what had happened until a week after the incident, when she told her mother that she had been raped. (TR 6/4-15.)
At trial, Sergeant Durkin, the arresting police officer, testified that Johnny Velez told him that he had sex with Figueroa in the kitchen “in the standing up position.” (TR 6/7-25.) In this respect the officer repeated voir dire testimony he had just given. (TR 6/7-16.) Yet, in the prosecutor’s closing argument, the prosecutor told the jury that Sergeant Durkin had testified that Velez told him, “we ended up in the kitchen and we did it up against the wall.”[3] (TR 6/8-123.) The prosecutor went on to comment, “Ladies and gentlemen, Johnny Gonzalez Velez said we were in the middle of the kitchen. Why in fifteen months did he move that distance? Is it so she’s not held against a wall against her will?” Id. Shortly thereafter the prosecutor argued, “Johnny Gonzalez Velez did not want it up against the wall because I’ll tell you something, up against the wall is one letter away from against the will.” (TR 6/8-124.)[4]
DISCUSSION
“The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done.” Mass.R.Crim.P. 30(b) “(T]he granting of a new trial is a decision firmly committed to the sound discretion of the trial judge.” Commonwealth v. Preston, 393 Mass. 318, 324 (1984). “The trial judge has the advantage of first-hand evaluation of the witnesses and the evidence at trial.” Commonwealth v. Gagliardi, 12 Mass.App.Ct. 439, 449 (1986). “(The judge] maybe aware of nuances of conduct, tone, and evidence that easily escape the cold record available to an appellate court on review.” Id.
“A prosecutor must limit comment in closing statement to the evidence and fair inferences that can be drawn from the evidence.” Commonwealth v. Kelly, 417 Mass 266, 270 (1994). Here, the Commonwealth admits that it was error to attribute to the defendant the statement, “we did it up against the wall.” (Commonwealth’s Memorandum in Opposition at 7.) The significance of this statement is not the fact of where the sexual act occurred, but rather the suggestion to the jury, in a case where the credibility of the defendant is at issue, that the defendant changed his story between the time he talked to the police officer after his arrest and the time he testified on the stand. Furthermore, not only did the prosecutor’s misstatement go beyond permissible argument, but “his subsequent remarks exacerbated the prejudice that may have arisen from his prior improper comment.” Commonwealth v. McLeod, 30 Mass.App.Ct. 536, 539 (1991).
In Commonwealth v. Kozec, 399 Mass 514 (1987), the Supreme Judicial Court discussed factors to be considered in determining whether prosecutorial misconduct warrants the granting of a new trial.
The consequences of prosecutorial error depend on a number of factors, such as: Did the defendant seasonably object to the argument? Was the prosecutor’s error limited to “collateral issues” or did it go the heart of the case? What did the judge tell the jury, generally or specifically, that may have mitigated the prosecutor’s mistake, and generally did the error in the circumstances possibly make a difference in the jury’s conclusions?
Id. at 518 (footnote and internal citations omitted).
Defense counsel seasonably objected to the improper argument by objecting at the conclusion of the prosecutor’s closing argument.[5] Although defense counsel did not renew her objection after the Court’s curative instructions, counsel had clearly indicated to the Court her objection to the prosecutor’s error, and therefore she adequately preserved the defendant’s rights. See Kelly, supra, 417 Mass at 270 n.6; Commonwealth v. Person, 400 Mass 136, 143 (1987); Commonwealth v. Rosa, 412 Mass 147, 159 (1992); but see Commonwealth v. Dowdy, 36 Mass.App.Ct. 495, 501 (1994).
The prosecutor’s error was not limited to a collateral issue, but went to the heart of the case — the credibility of Diana Figueroa and Johnny Velez. See McLeod, supra, 30 Mass.App.Ct. at 537 (credibility of victim and defendant central issue in rape trial); Kozec, supra, 399 Mass. at 520 (credibility of victim and defendant central issue in assault and battery trial). By stating, incorrectly, that Velez had changed his story, the prosecutor directly attacked Velez’s credibility. Where, as in this case, there is no physical evidence, the credibility of the victim and the defendant take on increased significance. Moreover, “(the Court] cannot overestimate the effect on the jury of [an] argument tending to show consciousness of guilt on the part of the defendant.” Person, supra, 400 Mass at 142, quoting Commonwealth v. Cobb, 374 Mass 514, 521 (1978).
In light of a recent case, Commonwealth v. Pavao, 34 Mass.App.Ct. 577 (1993), where the Appeals Court reviewed curative instructions similar to the Court’s instructions in this case,[6] it appears that this Court’s instructions were not sufficient to cure the prosecutor’s misstatement.[7] As in Pavao, the jury in this case was not instructed to disregard the prosecutor’s inappropriate statement. Id at 582. And, as in Pavao, id. at 583, the jury had heard the key words erroneously attributed to the defendant by the prosecutor, not only in his opening statement and closing argument, but also in his mischaracterization of Velez’s direct testimony during his cross-examination of Velez.[8] Overall, the charge may not have “neutralized the prejudicial effect of the prosecutor’s argument.” Person, supra, 400 Mass at 143.
Finally, the Court cannot say “with assurance that the improper closing argument could not have influenced the jury to convict” the defendant. Kelly, supra, *436 417 Mass. at 272. The evidence of the defendant’s guilt was not overwhelming. See id. at 271; Rosa, supra, 412 Mass. at 160. There were inconsistencies in the victim’s testimony, and her testimony was contradicted by other prosecution witnesses. Moreover, the victim did not tell anyone about the incident for a week after it happened; consequently, there was no physical evidence. The jury deliberated for seven hours over two days. Because the prosecutor’s misstatement could have made a difference in the jury’s conclusions, justice may not have been done. Kozec, supra, 399 Mass. at 518.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s motion for a new trial is ALLOWED.

 At trial, the defendant testified that his legal name is “Johnny Velez Gonzales.” He is referred to here as “Velez."

 Defendant originally filed a motion for new trial under Mass.R.Crim.P. 25(b)(2). Upon request of the Court, defendant submitted a motion for new trial pursuant to Mass.R.Crim.P. 30(b).

 In his opening statement, the prosecutor implied that Officer Durkin would testify that Velez told him, ”[w]e had sex standing up against the kitchen wall.” TR 6/3-129. Defense counsel objected. TR 6/3-131.

 From the prosecutor’s opening statement, to his direct examination of the defendant (during which he repeatedly implied, and tried to get the defendant to admit, that the sexual act had taken place against the kitchen wall), to his closing argument, the dual theme of “against the wall” and “against her will" were consistent.

 Defense counsel objected as follows: “Your Honor, I would like to make my objections to the Commonwealth’s closing argument. Most importantly, and this is one which I don’t know whether it can be fixed. The prosecutor continued to misstate the evidence and on a very significant point, that being up against the wall. Sergeant Durkin testified that Johnny Velez said we did it up against the wall. That was absolutely not his testimony. And that is absolutely not his testimony. It’s an inaccurate misstatement of the facts and the prosecutor knows that. And that becomes a very significant point in this case because that goes right straight to his credibility. Frankly, Your Honor, I feel that it is such a very, very significant point, that we should go back and check the testimony. And if it turns out — if, in fact, it turns out that this is inaccurate, because I had a voir dire and the purpose was — I was watching for that exact problem. And if this is inaccurate, then the prosecutor should have to recant or take that back in front of the Jury, because that is going to become — that could be the deciding factor here in this case.” (TR 6/8 128-129.)

 In Pavao, the trial court instructed the jury as follows: ”[T)he district attorney in her closing, in quoting the defendant Pavao said, ‘I’m going to kill,’ rather than ‘get.’ If your memory of the evidence is that that was said in this case, then you may consider it as a part of her argument. If your memory is that the word ‘kill’ was not used, and I will go so far as to say that would comport with my recollection, but, again, it’s your memory, if the word ‘kill’ was not used, then you must certainly disregard all that altogether, because the word ’kill’ would carry legal implications that the word ‘get’ would not convey and (sic) as you will see from my instructions.” Pavao, supra, 34 Mass.App.Ct. at 582-83. On review, the Appeals Court held that the trial judge’s instructions were insufficient to cure the prosecutorial error, and ordered a new trial.

 The curative instructions in this case were as follows:
Ladies and gentlemen, before we break for lunch I want to make one instruction to you with regard that comes out of the arguments that you just heard. As I will instruct you more fully after lunch. It is your recollection of what the witness has said and what the testimony was and what the evidence is that controls. It’s not my memory, it’s not [the prosecutor’sl memory, it’s not [defense counsel’s] memory.
Individual memories can be faulty and that’s why we have jurors of twelve to decide these things rather than other individuals.
With regard to [the prosecutor’s] reference to Officer Dur-kin, I believe that [the prosecutor] said that Officer Durkin reported that the [defendant had said to him that he and the alleged victim here, Diana Figuoroa [sic] had a sexual encounter up against a wall in the kitchen.
My notes and my memory indicate that there was no reference by Officer Durkin to up against a wall. Rather there was a reference to a sexual encounter in the kitchen in a standing position. But that’s my memory. And as I have told you, it is not anybody’s recollection of the testimony but yours that controls your determination of what the facts are.
(TR 6/8 131-132.)

 In his first question on cross-examination of defendant, the prosecutor mischaracterized Velez’s direct testimony by asking “Sir, I understand at the conclusion of your direct testimony as you indicated, had sex against the kitchen wall?” (TR 6/8-67.)