COMMONWEALTH vs. RONALD R. HELME.

Bristol.   December 2, 1986. — February 24, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Search and Seizure*, Automobile, Threshold police inquiry, Plain view.
*Constitutional Law*, Search and seizure.

The circumstances that an automobile was parked at night with its interior
   lights illuminated in the parking lot of an establishment that serves
   liquor, and that the vehicle's engine was running and its headlights were
   off, raised no reasonable suspicion of criminal activity nor suggested
   any hazardous condition confronting the occupants of the vehicle, and,
   consequently, police were not warranted in initiating a threshold inquiry
   by blocking the vehicle and preventing it from leaving the parking lot.
   [301-302]
A police policy of investigating any automobile parked with its interior lights
   illuminated would be too broad to justify police in approaching such a
   vehicle for a threshold inquiry. [302]
Where police were not justified in initiating a threshold inquiry of a criminal
   defendant by blocking his automobile, the plain view doctrine could not
   be invoked to legitimize the seizure of items from the automobile.
   [302-303]

INDICTMENTS found and returned in the Superior Court De-
partment on August 21, 1984.

A pretrial motion to suppress evidence was heard by *John
D. Sheehan*, J.

An application for an interlocutory appeal was allowed by
*Wilkins*, J., in the Supreme Judicial Court for the county of
Suffolk and the appeal was reported by him.

*Ronald A. Pina*, District Attorney, *& Dana A. Curhan*,
Assistant District Attorney, for the Commonwealth, submitted
a brief.

HENNESSEY, C.J.   Two indictments charged the defendant
with the unlawful possession of marihuana and hashish, class
D controlled substances, in violation of G. L. c. 94C, § 34. A

third indictment charged unlawful possession of cocaine, a class B controlled substance, with intent to distribute, in violation of G. L. c. 94C, § 32A. The defendant filed a motion to suppress certain items seized from his automobile. This motion was allowed. The Commonwealth's application for interlocutory appeal under Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979), was allowed by a single justice of this court and referred for decision by the full bench. We affirm the judge's order to suppress the items seized.

The judge found the following facts. While on patrol about 12:30 A.M. on May 28, 1984, Officer Marc Allen Stevens noticed a white Cadillac in the rear of the parking lot of The Tavern pub in Taunton. Although there were other cars parked in the parking lot, and the bar's clientele were coming and going, Officer Stevens' attention was drawn to this automobile because its interior was illuminated by lighting from within the vehicle. As Officer Stevens approached the automobile, he turned on the high beams of the police cruiser. He noticed three persons inside the car. The defendant was in the driver's seat, Melinda Arruda was in the front passenger's seat, and a second male was in the rear seat. Officer Stevens pulled his cruiser up to the white Cadillac and parked it so as to block its exit. He then turned on the "alley light," which flooded the interior of the other vehicle with light.

Approaching the parked Cadillac, Officer Stevens asked the driver if everything was all right. The defendant responded that they were just leaving. With the aid of a flashlight, Officer Stevens observed a mirror with white powder on it sticking out from under the seat beneath the defendant's legs. He also observed an open packet containing a white powder on the front seat between the defendant and Arruda. Based upon his training and experience, Officer Stevens believed the white powder to be cocaine. At that point, he asked the defendant to step out of the automobile and conducted a "pat frisk." He found a package of razor blades, a plastic straw, and two additional packets similar to the one seen on the front seat. Officer Stevens then placed the defendant under arrest.

Turning his attention to Arruda, Officer Stevens noticed that she had taken a "baggy" containing a white substance and placed it between her legs. The officer told her to step out of the automobile. In getting out, Arruda grabbed the plastic bag and threw it toward the defendant. The bag landed on the driver's side of the automobile and was later retrieved. After a "pat frisk" during which no weapons or contraband was found, Arruda was placed under arrest. A search of the passenger in the rear seat disclosed no weapons or contraband.

A search of the passenger compartment of the car disclosed a brown paper bag on the floor near the front seat. In this bag was brown vegetable matter, a plastic film container with marihuana "roaches," rolling papers, plastic and metal sifters, and a scale. A further search of the area around the automobile revealed a match box containing a white substance.

The Commonwealth argues that the police conduct in this instance was proper as a lawful threshold inquiry under the principles set forth in *Terry* v. *Ohio*, 392 U.S. 1 (1968). We have determined that an "investigatory check of a parked vehicle . . . regardless of its limited purpose and brevity, is an intrusion on privacy rights." *Commonwealth* v. *King*, 389 Mass. 233, 241 (1983), citing *Terry* v. *Ohio, supra* at 17. In this instance, Officer Stevens initiated the threshold inquiry when he parked the police cruiser so as to block the defendant's automobile and prevent it from leaving the parking lot. Consequently, we must determine whether the police conduct was reasonable within the meaning of the Fourth Amendment "by balancing the need to search . . . against the invasion which the search . . . entails." *Terry* v. *Ohio, supra* at 21, quoting *Camara* v. *Municipal Court of San Francisco*, 387 U.S. 523, 536-537 (1967). *Commonwealth* v. *King, supra. Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Under the traditional *Terry* analysis, our inquiry is two-fold: first, whether the initiation of the investigation by the police was permissible under the circumstances, and, second, whether the scope of the search was justified under the circumstances. *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 175 (1980). *Commonwealth* v. *Silva, supra.* Because we conclude that the initiation

of the investigation was impermissible, we need not address the latter question.

A police officer may initiate a threshold inquiry "where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime." *Commonwealth* v. *Silva, supra* at 405. Furthermore, the officer's actions must "be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience. A mere 'hunch' is not enough. . . . The test is an objective one." *Commonwealth* v. *Silva, supra* at 406. *Commonwealth* v. *King, supra* at 243. *Commonwealth* v. *Cantalupo, supra* at 175-176. We conclude that the facts in this case do not support a threshold inquiry under the above standard.

The Commonwealth argues that, because the encounter took place at night in the parking lot of an establishment that serves liquor, which, according to Officer Stevens, is a common location for narcotics use, and because the defendant's automobile was parked with the engine running, the interior lights on, and the headlights off, the circumstances could reasonably be construed as suspicious. Furthermore, although the judge did not so find, the Commonwealth claims that the defendant, upon observing Officer Stevens approaching, attempted to conceal the narcotics under the seat. In *Commonwealth* v. *Silva, supra,* we considered an encounter between a defendant and the police that occurred at night in an isolated area. We considered important the fact that the defendant, while in the automobile, made a gesture as if to conceal something which one of the officers thought was a gun. In that case we concluded that the initiation of the search, if permissible at all, clearly approached the outer limits of police privileges to search. *Commonwealth* v. *Silva, supra* at 407. In this case, the police officer exceeded those limits. Too many alternative explanations, all of them innocent, exist which could explain the facts as presented to the officer and negate any suspicion that "a person has committed, is committing, or is about to commit a crime." This case clearly is close to *Commonwealth* v. *Bacon*, 381 Mass. 642 (1980) (facts did not warrant initial investigatory

"stop") and is unlike *Commonwealth* v. *Almeida,* 373 Mass. 266 (1977) (articulable suspicion justified initial investigation of parked vehicle).

Nor is the Commonwealth aided by claiming that the threshold inquiry was lawful pursuant to a policy of the Massachusetts State police to check all parked automobiles with their interior lights on. In *Commonwealth* v. *King, supra,* we sustained a threshold inquiry conducted pursuant to a State police policy requiring the investigation of all stopped automobiles during the winter months to determine whether occupants, if any, were disabled, had fallen asleep, had abandoned the vehicle, or were otherwise in need of assistance. Given the strong State interest in protecting the public from hazards of carbon monoxide poisoning and exposure in these situations, we could not conclude that "the investigatory check was unreasonable or violative of the Fourth Amendment rights of the defendant." *Id.* at 242. In balancing "the need to search . . . against the invasion which the search . . . entails," we conclude that, under the circumstances of this case, the search was unreasonble. The policy of investigating parked automobiles with interior lights on is too broad to justify even the limited intrusion of approaching the car to determine "if everything is all right." This is not akin to the situation in *Commonwealth* v. *King,* where serious hazards faced the occupants of automobiles stopped on the road during the winter months. The use of interior lights in an automobile raises no reasonable suspicion of criminal activity nor indicates potentially hazardous conditions confronting the occupants of the vehicle. Consequently, the mere fact that an automobile is parked with its interior lights on does not present the police with justification to "stop," or detain, the automobile and its occupants for investigation.

The Commonwealth argues that the evidence was lawfully seized under the plain view doctrine. The plain view doctrine, however, requires "'prior police justification for an intrusion in the course of which an officer inadvertently comes across incriminating evidence.'" *Commonwealth* v. *Sergienko, ante* 291, 293 (1987). *Commonwealth* v. *Walker,* 370 Mass. 548,

557, cert. denied, 429 U.S. 943 (1976). *Commonwealth* v. *Franklin*, 376 Mass. 885, 898 (1978). Here, the judge found that the police officer had parked the police cruiser to block the other vehicle from departing, and had then flooded the interior of the other vehicle with light. Cf. *Commonwealth* v. *Sanderson*, 398 Mass. 761, 766 (1986). Because the police officer had no justification to initiate the threshold inquiry of the defendant by blocking the defendant's automobile, "prior justification" did not exist, and the plain view doctrine may not be invoked to legitimize the improper seizure. *Commonwealth* v. *Pietrass*, 392 Mass. 892, 900 (1984).

*Order allowing motion to suppress affirmed.*