COMMONWEALTH vs. STEVEN C. TOMPERT.

No. 88-P-501.

Franklin.    December 16, 1988. — September 27, 1989.

Present: PERRETTA, SMITH, & WARNER, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Automobile,
    Threshold police inquiry.

A State police officer's investigatory check of a motor vehicle parked in a
    highway rest area at night, conducted pursuant to a policy to ascertain
    in such circumstances whether any occupants were in need of aid or
    assistance, was not unreasonable under the Fourth Amendment of the
    Constitution of the United States. [807-808]
In the circumstances of a lone State police officer's proper and reasonable
    investigatory check of an occupied motor vehicle parked in a highway
    rest area at night, the officer's observations of the two men in the vehicle
    warranted his becoming concerned for his safety and justified his taking
    the precautions of opening the door and ordering the two men to get
    out. [808-809] SMITH, J., dissenting.

COMPLAINT received and sworn to in the Orange Division
of the District Court Department on August 18, 1987.

A motion to suppress evidence was heard by *Allan McGuane,*
J.

*Ariane D. Vuono,* Assistant District Attorney, for the Com-
monwealth.

*William Howe Oldach* for the defendant.

PERRETTA, J. This is an appeal by the Commonwealth from
an order of a District Court judge allowing the defendant's
motion to suppress as evidence items (white powder and drug
paraphernalia) seized by a State trooper from the defendant's
truck, in which he and another man were sitting while parked
in a highway rest area at night. After an evidentiary hearing
on the motion, the judge ruled that the trooper had acted on a
hunch rather than with a reasonable suspicion or probable cause

to believe that a crime had been or was being committed. We reverse, concluding that the trooper was conducting a reasonable investigatory check, that in the process of so doing he had cause to become concerned for his safety, and that the evidence came into his plain view when, for purposes of protecting himself, he opened the truck door and ordered the men out of the vehicle.

I. *The Facts.*

We relate the facts as found by the judge and as supplemented by details from the transcript of the hearing at which trooper James Conley was the only witness.[1] On August 13, 1987, Conley was on highway patrol on Route 2 in Athol. He was driving in a clearly marked police cruiser. It was about 9:00 P.M., when he noticed a lone vehicle, a pick-up truck, parked in a rest area off the highway.

It was part of "patrol procedure" to check all rest areas off the highways. Conley drove into the rest area and stopped behind and to the left of the truck. There were two men seated in the truck, and its interior light was on. Conley got out of his cruiser "to check [on] the well-being" of the occupants of the truck. At this time, Conley testified, he had no reason to be suspicious of them. He started to walk toward the truck on the driver's side.

Just as he began his approach of the truck, Conley saw the men turn and look towards him. The interior light of the truck went off, and Conley saw the men begin "to move about frantically, making furtive movements and moving — moving all about." Now concerned for his safety — the men were continually looking back to check his progress, the passenger bent or fell out of sight, the driver (the defendant) was turning "towards the right" and the "upper part of his body" was moving — Conley changed his direction "in somewhat of a surprise." He came up to the truck on the passenger's side. Without inquiry, Conley opened the door "at an angle for . . . [his] own

---

[1] The motion judge accepted the trooper's testimony. His ruling is based upon a conclusion of law and not a determination concerning credibility.

. . . protection" while warning, "Don't move; keep your hands visible." When Conley opened the door, "everything was visible." He saw white powder, a mirror and a straw on the front seat between the men. Conley ordered the men from the truck and patted them down.

Conley then called for "backup" assistance. When the other officers arrived at the scene, they searched the truck, finding a marijuana cigarette, a knife, and a clear bag containing a quantity of white powder.[2]

II. *The Defendant's Fourth Amendment Rights.*

It has never been the Commonwealth's position that the turning off of the interior light and the men's frantic and furtive movements gave Conley the right to approach the truck and open its door. Rather, the Commonwealth argues that Conley was making a reasonable investigatory check of a vehicle in a rest area in accordance with patrol procedures policy, see *Commonwealth* v. *King*, 389 Mass. 233, 242 (1983), and that, in the course of doing so, he became concerned for his safety. His opening of the door and ordering of the men from the truck, the Commonwealth contends, were minimally intrusive acts, warranted by his belief that he was in danger.

Although the truck was parked and Conley did not block its path in any way, compare *Commonwealth* v. *King*, 389 Mass. at 236; *Commonwealth* v. *Helme*, 399 Mass. 298, 299 (1987), the encounter between the men and Conley implicated their rights under the Fourth Amendment to the United States Constitution. That the defendant might have been free to drive away when Conley approached the truck is irrelevant. There can be no dispute that, when Conley opened the door, the defendant was stopped from doing anything other than what was ordered.

Whether Conley had the right to open the door depends upon whether he was justified in making an investigatory check. Fear of harm, standing alone, does not justify a stop. "Any

---

[2] The sole issue in the District Court and on appeal is whether the trooper's actions of investigating the truck and opening its door were lawful. The defendant has never made an argument concerning the search of the truck after the men were ordered from it.

person, including a policeman, is at liberty to avoid a person he considers dangerous. If and when a policeman has a right to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence." *Terry* v. *Ohio*, 392 U.S. 1, 32 (1968) (Harlan, J., concurring). See also 3 LaFave, Search and Seizure § 9.4(a) at 499-500 (2d ed. 1987) ("[I]n the absence of some legitimate basis for the officer being in immediate proximity to the person, a degree of suspicion that the person is armed which would suffice to justify a frisk *if* there were that basis will not alone justify such a search" [emphasis in original]). As Conley's basis for approaching the truck was the policy requiring that he check on all vehicles in highway rest areas, the question is whether that policy was constitutional, see *Commonwealth* v. *King*, 389 Mass. at 241-242, irrespective of the fact that he did not block the truck with his cruiser.

III. *The Investigatory Check.*

An investigatory check "constitutes a search within the meaning of the Fourth Amendment and is required by the very purpose of the Fourth Amendment to be reasonable. See *Delaware* v. *Prouse*, 440 U.S. 648, 653-654 (1979). The test for determining reasonableness requires balancing the need to search against the invasion that the search entails. *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). See *Delaware* v. *Prouse, supra* at 654." *Commonwealth* v. *King*, 389 Mass. at 241. See also *Brown* v. *Texas*, 443 U.S. 47, 50-51 (1979). As Conley testified, his purpose in approaching the truck was to check on the occupants' "well-being," which we construe to mean whether assistance or aid was needed.

In *Commonwealth* v. *King,* 389 Mass. at 242, the public interest to be served — protecting motorists from the hazards of winter driving — was held to justify the intrusion presented to motorists approached in accordance with a policy of investigating during winter months every stopped or parked vehicle, no matter where situated, to ascertain whether any occupants were in need of aid. However, in *Commonwealth* v. *Helme*, 399 Mass. at 302, the policy of checking "all parked automobiles with their interior lights on" was found to be un-

reasonable. It was not supported by a significantly sufficient public interest as the "use of interior lights in an automobile" does not "indicate[] potentially hazardous conditions confronting the occupants of the vehicle." *Id.*

We view the policy here in question — to check on all vehicles in highway rest areas to determine if aid or assistance is needed — as furthering a public interest of sufficient concern to justify a nighttime investigatory check. As the check here in issue took place after dark, we need not and expressly do not consider the reasonableness of the policy as it might pertain to the daytime. Cf. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974); *Commonwealth* v. *Adams*, 389 Mass. 265, 272 (1983); *Commonwealth* v. *Love*, 26 Mass. App. Ct. 541, 544-545 (1988).

The very purpose of a highway rest area is to provide motorists with a respite or shelter from the hazards of driving, such as fatigue, illness, or mechanical failure to name but a few. This is not to say that motorists pull into rest areas only for reasons related to driving hazards. We do not think, however, that it is unreasonable to inquire of a motorist parked in a highway rest area after dark whether aid is needed. Such an inquiry presents a minimum intrusion which ends with a negative response. Further, the policy was not discretionary, it applied to all vehicles, and it was limited to rest areas.

When considered in the circumstance of the nighttime, we cannot say that an investigatory check of the defendant's truck was unreasonable. We conclude, therefore, that Conley had the right not to avoid the risk he perceived and to carry out the investigatory check procedures to completion.

IV. *The Threat of Harm.*

Having concluded that Conley was entitled to approach the truck to inquire if assistance was needed, we must now consider whether he was entitled to take the precautions that he did. "'The test is an objective one. While the officer need not be absolutely certain that the individual is armed, the basis for his acts must lie in a reasonable belief that his safety or that of others is at stake. *Terry* v. *Ohio, supra* at 27. Essentially, the question is whether a reasonably prudent man in the police-

man's position would be warranted in the belief that the safety of the police or that of other persons was in danger.'" *Commonwealth* v. *Almeida*, 373 Mass. 266, 271 (1977), quoting from *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). See also *Michigan* v. *Long*, 463 U.S. 1032, 1046-1049 (1983); *Commonwealth* v. *King*, 389 Mass. at 243, and cases therein cited.

Trooper Conley was on duty alone, it was night, there was no other vehicle in the rest area, and he was out of his cruiser before the cause for concern arose. After noting that Conley was approaching, both men began a series of furtive movements, and the interior light went out. Like the police officer in *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 129-130 (1984), Conley "had no more than a few seconds in which to assess the extent, if any, of the danger, and to ascertain the most effective and least intrusive means of protecting himself." As further stated in *Sumerlin, supra* at 130: "The officer could reasonably have taken into account the 'inordinate risk confronting an officer as he approaches a person seated in an automobile.' *Pennsylvania* v. *Mimms*, 434 U.S. 106, 110 (1977). See *Adams* v. *Williams*, 407 U.S. 143, 148 n.3 (1972). 'To all of these facts the officer [was] entitled to apply [his] police experience.' *Commonwealth* v. *Silva*, 366 Mass. 402, 407 (1974)." As for ordering the men out of the truck, see and compare *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978), with *Commonwealth* v. *Loughlin*, 385 Mass. 60, 62 & n.3 (1982).

Because the defendant never put in issue Conley's actions after he opened the truck door, we need go no further in our discussion. We conclude that in the circumstances presented, the trooper acted reasonably.

*Order allowing motion to suppress*
*reversed.*

SMITH, J. (dissenting). In *Terry* v. *Ohio*, 392 U.S. 1 (1968), the Supreme Court held that a frisk for weapons was legitimate as long as the "officer is justified in believing that the individual

whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Id*. at 24.[1] The officer's belief would be justified only if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger . . . . And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id*. at 27. "In the case of the self-protected search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron* v. *New York,* 392 U.S. 40, 64 (1968). Also see *Terry* v. *Ohio, supra* at 21 ("officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant that intrusion").

Here, the majority concludes that the trooper was justified in opening the door because he reasonably believed that his safety was in jeopardy. Because I believe that the record before us does not support that conclusion, I respectfully dissent.

The "specific and articulable facts" upon which the trooper based his belief that his safety was in jeopardy consisted entirely of his observations of the movements of the occupants (and the fact that the interior light went off) as he approached the truck.[2] On that point the trooper testified that he "observed both subjects turn, look towards me as I was approaching the vehicle. The interior light went off and both subjects began to move about frantically, making furtive movements and moving —

---

[1] In *Michigan* v. *Long,* 463 U.S. 1032 (1983), the Supreme Court extended *Terry* v. *Ohio, supra,* to include automobile "frisks."

[2] The trooper's answers on that point are unequivocal.
   "Q. Did you have any other reason to open that, open the passenger side door, other than your observation of the movements of the two passengers?
   A. Yeah, at that point I was protecting myself.
   Q. But the only reason that you felt the need to protect yourself was that you observed movement of the two passengers?
   A. Yes; the way they reacted to my presence."

moving all about." He stated that the defendant "continually . . . turned back a number of times to check my progress, and I observed him turn toward the right, and I observed movement on the upper part of his body." On this record I conclude that the officer did not articulate specific facts from which a rational inference could be drawn that the occupants of the truck were armed and dangerous and that the trooper's safety was jeopardized.[3]

---

[3] *Commonwealth* v. *Sumerlin,* 393 Mass. 127, 129-130 (1984), relied on by the majority, is not to the contrary. In *Sumerlin,* the police were investigating an illegally parked automobile in a high crime area where shootings had occurred. In this case, the trooper was not investigating a crime — he was checking on the well-being of the occupants of a truck properly parked in a rest area. There is nothing in the record that shows that the trooper was aware of any criminal activity whatsoever associated with that particular rest area.