Commonwealth *v.* Doulette.

## COMMONWEALTH *vs.* DAVID DOULETTE.

No. 91-P-119.

Plymouth. February 6, 1992. - May 11, 1992.

Present: BROWN, DREBEN, & GREENBERG, JJ.

Further appellate review granted, 413 Mass. 1104 (1992).

*Constitutional Law,* Search and seizure. *Search and Seizure,* Threshold police inquiry, Automobile.

A State police officer's brief, nonthreatening, routine investigatory inquiry of two people sitting in an automobile parked in a commuter parking lot in a remote area at 9:45 P.M. was reasonable in the circumstances and the controlled substance and paraphernalia in plain view on the floor of the vehicle were properly admissible in evidence. [507-510]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on September 23, 1988.

On appeal to the jury session of the Wareham Division a pretrial motion to suppress evidence was heard by *W. James O'Neill,* J., and the case was tried before *Robert J. Kane,* J.

*Arthur C. Ryley* for the defendant.

*Kathleen A. Reagan,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. The defendant was charged and convicted of possession of cocaine (G. L. c. 94C, § 34). Just prior to a six-member jury trial, he moved to suppress the Commonwealth's evidence on the ground of an illegal search and seizure. His sole claim on appeal is that the District Court judge was mistaken when he denied the motion.

The facts, taken from the judge's memorandum and supplemented by details from the transcript of the motion hearing, were these. At 9:45 P.M. on September 22, 1988, a State police trooper, Bruce Malenfant, while on uniformed cruiser patrol, entered the commuter parking lot in a remote area off

Route 104 in Bridgewater. His surveillance of the lot was routine, and on past occasions he had made arrests there for public drinking, breach of the peace, and various other unlawful activity. He noticed two unattended vehicles in the dimly lighted lot. Simultaneously he observed an interior light flick on and off inside a third — the defendant's car. He then shone his spotlight on each of the vehicles, which permitted this further observation. The defendant, seated behind the steering wheel, was looking straight ahead and talking out of the side of his mouth. The passenger in the front seat bent over, as if to pick up something — all the while staring straight at the cruiser. From such circumstances the officer inferred, and we think correctly, that a closer look was warranted. He pulled within ten to fifteen feet abreast of the defendant's vehicle. He alighted from his cruiser and, with flashlight lit, approached the defendant's vehicle and called out, "What's going on?" As there was no reply forthcoming, the officer walked up to the vehicle and noticed that the passenger was "looking down in front of him." He peered into the passenger side and saw protruding beneath the passenger seat a razor blade, a 1" x 1" paper wrapper, and a 3" x 5" mirror with white powder on it. As the passenger was ordered out of the vehicle, a film container, later determined to contain a packet of cocaine, fell to the ground. The cocaine and paraphernalia were seized, and the occupants were arrested.

On the basis of these facts, the judge concluded that no search was made by the arresting officer, that his approach to the vehicle was justified as a routine inquiry, and that the evidence was in plain view. We agree.

The defendant contends that such an investigatory check of his vehicle, however limited in purpose, was an invasion of his privacy rights. See *Commonwealth* v. *King*, 389 Mass. 233, 241 (1983). Absent specific articulable facts, his argument goes, the officer acted only on an impermissible "hunch," which was insufficient to justify the more intensive

inquiry that followed. *Commonwealth* v. *Helme*, 399 Mass. 298, 301 (1987).[1]

Since the United States Supreme Court's decision in *Terry* v. *Ohio*, 392 U.S. 1 (1968), it has been established that there is a broad category of brief, investigative stops and detentions which are constitutional despite the fact that they are undertaken both without a warrant and on the less demanding basis of "reasonable suspicion" (that criminal activity is about to be committed or that a felony has occurred) rather than on the basis of probable cause. See *United States* v. *Walker*, 933 F.2d 812, 815 (10th Cir. 1991), cert. denied, 112 S.Ct. 1168 (1992). The same standard is applicable to parked vehicles as well. See *Commonwealth* v. *Almeida*, 373 Mass. 266, 268, 270 (1977); *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990). In these types of cases, the first part of our two-pronged inquiry is whether the initiation of the investigation by the police is reasonable in the circumstances. *Ibid.*, citing *Terry* v. *Ohio*, *supra*. See also *Delaware* v. *Prouse*, 440 U.S. 648, 653-654 (1979).[2] It has often been stated that there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." *Camara* v. *Municipal Ct. of San Francisco*, 387 U.S. 523, 536-537 (1967). See *Commonwealth* v. *King*, *supra* at 241. Furthermore, the question of the reasonableness of the officer's conduct is determined on the basis of the information possessed by the officer at the time a decision to act is made.

---

[1]The defendant does not contend that either the illumination of his vehicle by the officer's spotlight or the use of his flashlight to look inside his car was impermissible in the circumstances. Compare *Commonwealth* v. *Oreto*, 20 Mass. App. Ct. 581, 584 (1985) (if an officer was rightly in a position to view the inside of a vehicle, the requirements of the Federal and State Constitutions do not preclude the use of artificial light to illuminate its interior).

[2]Because we conclude, in what follows, that the initiation of the investigation was permissible and because the contraband was in plain view, we need not address the second question whether the scope of the search or seizure was justified in the circumstances. Contrast *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 175 (1980).

In *Commonwealth* v. *Bacon*, 381 Mass. 642 (1980), two youthful-appearing men were operating a relatively expensive motor vehicle early one morning, and, upon seeing a police cruiser, the driver attempted to obscure his face from the view of the oncoming police. The court held that, standing alone, these factors were insufficient to warrant reasonable suspicion allowing an investigatory stop. *Id.* at 645-646. See also 3 LaFave, Search & Seizure § 9.3(c) at 456-457 (2d ed. 1987). Here, we think it is of controlling significance that the passenger's act of concealment confirmed the officer's initial suspicion that "criminal activity may be afoot."[3] The situation in the instant case is comparable to *Commonwealth* v. *Patti*, 31 Mass. App. Ct. 440 (1991), where a police officer came upon a man standing in a hotel parking lot at 3:15 A.M. next to an automobile with its hood up and where the police officer knew the parking lot had been the scene of motor vehicle thefts. There, we held it reasonable — but approaching the "outer limits" — for a police officer to initiate a *Terry* threshold inquiry. *Id.* at 441-443. Nighttime investigations of the particulars of an occupied vehicle, parked in an area where crimes have been committed, may be warranted. See *Commonwealth* v. *Almeida*, 373 Mass. at 271-272 (police properly initiated a threshold inquiry of a defendant seated alone in an automobile with engine running and headlights off in a private parking spot when the officer knew crimes had recently been committed in the area); *Commonwealth* v. *Moses*, 408 Mass. at 140 (reasonable suspicion that a drug transaction was taking place was warranted when officers on routine patrol at 5:45 P.M. observed men looking into a parked automobile and who quickly dispersed on the officer's approach).

On the record before us we conclude that the trooper was within the range of his authority and acted properly. He was

---

[3]Unlike the search in *Commonwealth* v. *Tompert*, 27 Mass. App. Ct. 804, 808 (1989), the conduct of the trooper does not rest upon a clearly established State police policy. See also *Commonwealth* v. *King*, 389 Mass. at 242 (where regularized investigatory checks on the occupants of vehicles parked in State highway rest areas in the winter was held to be a legitimate exercise of police power).

warranted in examining the situation confronting him. See *Commonwealth* v. *Ciaramitaro,* 26 Mass. App. Ct. 110, 114 (1988), quoting from *Adams* v. *Williams,* 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time"). The vehicle's occupant's furtive gestures gave the officer additional cause to confirm his suspicion that unlawful activity was going on. It is apparent that what the officer was attempting to do was carry out an on-the-scene investigation in a public area of persons whose presence, in his experience, was out of the ordinary. As the United States Supreme Court recognized in *Terry,* 392 U.S. at 19 n.16, not all police-citizen encounters are alike.[4] The defendant is not helped by *Commonwealth* v. *Helme,* 399 Mass. at 302, particularly in that the trooper in the instant case did not block the defendant's egress from the lot nor did he restrict the defendant's freedom of movement until after he made the relevant observations. We consider important that finding by the judge. Contrast *id.* at 299, 303; *Commonwealth* v. *Stawarz, ante* 211 (1992) (sudden stop of defendant's vehicle by blocking its path created the impression that the intrusion was more than a routine inquiry, and evidence seized as a result of this unlawful arrest was properly suppressed).

Thus, in light of the background knowledge available to the officer at the time he entered the parking area, the hour, and the nonthreatening nature of his encounter with the defendant, we believe the officer's actions were lawful and reasonable.

*Judgment affirmed.*

---

[4] Writing for the majority, Chief Justice Warren observed that "[s]treet encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life." *Id.* at 13.