COMMONWEALTH vs. DAVID K. DOULETTE.

Plymouth. December 9, 1992. - March 23, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Threshold
  police inquiry, Automobile, Plain view, Expectation of privacy.

A police officer did not make an investigatory "stop" by parking his cruiser
  near but not blocking the defendant's automobile, which was parked in
  a commuter parking lot at 9:45 P.M., or by leaving the cruiser and ap-
  proaching the defendant's vehicle; nor did the officer's action in shining
  his flashlight into the defendant's automobile constitute a search. [655-
  657]

COMPLAINT received and sworn to in the Brockton Divi-
sion of the District Court Department on September 23,
1988.

On appeal to the jury session of the Wareham Division, a
pretrial motion to suppress evidence was heard by *W. James
O'Neill*, J., and the case was tried before *Robert J. Kane*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Arthur C. Ryley* for the defendant.

*Kathleen A. Reagan*, Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. The defendant (Doulette) was convicted of pos-
session of cocaine (G. L. c. 94C, § 34 [1990 ed.]) in a jury-
of-six session. Prior to that trial he filed a motion to suppress
evidence because, he asserts, the police's investigative "stop"
of his parked automobile was unlawful. The judge denied
Doulette's motion to suppress. Doulette appealed. The Ap-
peals Court affirmed the denial of the motion to suppress,
concluding that the officer's approach to the automobile was
justified as a routine inquiry. *Commonwealth* v. *Doulette*, 32

Mass. App. Ct. 506 (1992). Doulette sought further appellate review of the denial of his motion to suppress.[1] We allowed his application. We affirm.

*Facts.* The facts as found by the jury-of-six motion judge are as follows: "On September 22, 1988, at 9:45 P.M., [the arresting officer] while on uniformed cruiser patrol, entered the commuter parking lot on Rte. 104 (Off Rte. 24) in Raynham. [The arresting officer] testified that it was a routine check of this lot and on past occasions he had observed criminal activity there. As he entered the lot he noticed an interior light on in the subject vehicle. He then proceeded to shine his cruiser spotlight on two other vehicles and then he illuminated the subject vehicle. He observed the driver (ultimately the defendant) stare straight ahead and noticed a passenger bent over as if he were picking up something. The trooper parked his vehicle to the side of the subject vehicle, without blocking the vehicle. The trooper got out and walked over to the subject car and looked into the vehicle with his flashlight. He then observed a razor blade, a 1″ x 1½″ paper wrapper, and saw a 3″ x 5″ mirror with white powder protruding from under the seat. Based on those observations, the trooper ordered the defendant and the passenger out of the vehicle, seized the noted items and charged the defendant with unlawful possession of a controlled substance."

The jury-of-six motion judge ruled that the arresting officer did not search the vehicle by shining a flashlight into

---

[1]In his application for further appellate review Doulette states that at the hearing on the motion to suppress prior to the jury-of-six trial there was no evidence that Doulette was "talking out of the side of his mouth," that the passenger in Doulette's vehicle was constantly staring at the trooper's cruiser or that the passenger was engaged in the act of "concealment." See 32 Mass. App. Ct. at 507. Therefore, Doulette concludes that the Appeals Court erred in determining that it was appropriate to deny his motion to suppress because that court wrongly relied on facts not before the motion judge.

We agree with the defendant that those facts were not adduced at the hearing on the motion to suppress just prior to the jury-of-six trial and should not have been considered by the Appeals Court. Nevertheless, we conclude that, excluding those facts, the denial of the motion to suppress was correct.

the automobile. The judge concluded that there was no unlawful search and seizure and denied Doulette's motion to suppress. There was no error.

*The stop.* Doulette argues that the arresting officer's "threshold inquiry" was not supported by specific and articulable facts as required by *Terry* v. *Ohio*, 392 U.S. 1 (1968). Doulette contends that the arresting officer's actions, in leaving his cruiser, approaching Doulette's automobile, and shining his flashlight into the automobile, constituted a search prohibited by the Fourth Amendment to the United States Constitution.[2]

Doulette's argument fails because it is premised on a fundamental misunderstanding of the character of the encounter between the arresting officer and Doulette. The trooper's conduct at issue here did not constitute a "stop." *Terry* v. *Ohio, supra.* The trooper did not make an investigatory "stop." Doulette's automobile was already parked; the arresting officer neither stopped Doulette nor took action to prevent Doulette from leaving. Although Doulette suggests that he felt intimidated by the trooper's getting out of his cruiser, the trooper had every right to be in that public parking lot and to get out of his cruiser. The mere fact that the defendant felt intimidated does not make the trooper's actions a stop, a search, or a seizure.

The officer's actions, in shining a flashlight into Doulette's parked automobile, did not constitute a "search." The use of a flashlight to look into the interior of an automobile is not a search. *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 281 & n.1 (1974), and cases cited therein. See *Commonwealth* v. *Haefeli*, 361 Mass. 271, 280 (1972); *Commonwealth* v. *Wilson*, 360 Mass. 557 (1971) (not unlawful to see evidence of crime which was in plain view in automobile). The trooper's discovery of the drugs and drug paraphernalia resulted from a mere "plain view observation." In *Commonwealth* v.

---

[2]The defendant does not make a separate argument under the Massachusetts Declaration of Rights. Therefore, we limit our discussion to the Fourth Amendment to the United States Constitution.

*Sergienko*, 399 Mass. 291 (1987), we said, "The key to understanding the distinction between the plain view doctrine and a plain view observation is a recognition that a plain view observation involves no intrusion into an area in which the defendant has a reasonable expectation of privacy. As long as no such intrusion occurs, the observation does not rise to the level of a search, and Fourth Amendment limitations are not triggered. . . . Our cases . . . have acknowledged that no reasonable expectation of privacy, and thus no search, is involved when a police officer observes criminal activity or contraband within an automobile without physically intruding into the vehicle. . . . The use of a flashlight . . . does not alter this conclusion." (Citations omitted.) *Id.* at 294-295.

Doulette cites *Commonwealth* v. *Tompert*, 27 Mass. App. Ct. 804 (1989), as support for his argument that the arresting officer's very approach to Doulette's vehicle implicated Doulette's Fourth Amendment rights. In *Tompert*, however, the arresting officer did not see evidence of a crime until he had opened a door of the automobile and ordered the occupants not to move. The focus in *Tompert* was the necessity for some justification for an intrusive, *Terry*-type search of a vehicle; the policy of the State police to check on vehicles at rest stops was sufficient justification to conduct the *Terry*-type search when the officer became concerned for his safety during his approach. In this case, the officer saw the evidence indicating contraband from outside the automobile.

Doulette also cites *Commonwealth* v. *Helme*, 399 Mass. 298 (1987), which, he argues, stands for the proposition that the police may not even approach an automobile absent specific and articulable facts which would warrant a person in believing that a crime was being committed or about to be committed. In the *Helme* case the officer blocked the defendant's automobile in a parking lot solely on the ground that the automobile's interior light was on and there were three people in the car. We said "the mere fact that an automobile is parked with its interior lights on does not present the police with justification to 'stop,' or detain, the automobile and its occupants for investigation." *Id.* at 302.

Doulette's reliance on *Commonwealth* v. *Silva*, 366 Mass. 402 (1974), is misplaced. In *Silva* we merely observed that a search that was undertaken for investigative purposes rather than for the officers' protection was not justifiable under *Terry*. Doulette's reliance on *Commonwealth* v. *King*, 389 Mass. 233 (1983), and *Delaware* v. *Prouse*, 440 U.S. 648 (1979), is similarly unpersuasive. In *King*, *supra* at 243, there was no dispute that the defendant was seized when a trooper repositioned his cruiser to block the defendant's vehicle. In *Prouse*, *supra* at 651, the patrolman stopped the defendant's automobile without any prior justification. Here, the trooper took no such action. It is true that an officer's "mere hunch or 'a gut feeling that there was something definitely wrong' on the part of the officer is insufficient to satisfy the requirement of specific and articulable facts." *Commonwealth* v. *King*, 389 Mass. 233, 243 (1983). The Fourth Amendment does not, however, require that the police be aware of specific and articulable facts that an individual is involved in criminal activity in order to look at the individual or the individual's automobile.

The Fourth Amendment does not prohibit a police officer who is in a public place from taking appropriate action when the officer sees evidence of a crime in plain view from a spot where the officer has a right to be. "If [the police] are to serve any purpose of detecting and preventing crime by being out on the streets at all, they must be able to take a closer look at challenging situations as they encounter them." *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 281 (1974), quoting *Dorsey* v. *United States*, 372 F.2d 928, 931 (D.C. Cir. 1967).

*Judgment affirmed.*