COMMONWEALTH vs. JOHN J. ECKERT.

Hampden. February 7, 2000. - May 18, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Automobile, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Motor Vehicle,* Operating under the influence.

Discussion of cases involving police officers' investigatory checks of occupied vehicles parked in rest areas. [593-595]
A District Court judge erred in requiring a showing of probable cause, rather than reasonable suspicion, for a State trooper's administration of field sobriety tests to a person of whom the trooper made inquiry after finding him asleep in an automobile parked in a roadside rest area on a State highway [595-598]; where the judge's findings were insufficient to determine whether the trooper had a reasonable basis for suspecting that the defendant was operating while under the influence of alcohol, the matter was remanded for further findings and a ruling under the correct standard [598-600].

COMPLAINT received and sworn to in the Holyoke Division of the District Court Department on August 25, 1997.

A motion to suppress evidence was heard by *Philip A. Beattie,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Abrams,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Sidney E. Reavey,* Assistant District Attorney (*Jane Davidson Montori,* Assistant District Attorney, with her) for the Commonwealth.

*Laurie M. Halbert* (*Aaron Wilson* with her) for the defendant.

LYNCH, J. The defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24. A District Court judge allowed the defendant's motion to suppress the results of field sobriety tests administered by the arresting officer. A single justice of this

court granted the Commonwealth leave to appeal from the allowance of the motion and reported the matter to the Appeals Court. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979). We transferred the appeal here on our own motion. We conclude that the motion judge erred in requiring a showing of probable cause, rather than reasonable suspicion, to justify the officer's administration of field sobriety tests to the defendant, and remand the matter for further findings.

1. *The suppression hearing.* The evidence before the motion judge consisted exclusively of testimony from the arresting officer, State Trooper Brendon Shugrue. In allowing the defendant's motion to suppress the results of the field sobriety tests, the judge found and ruled as follows:[1]

> "[Trooper] Shugrue approached [the defendant's] vehicle at a roadside rest area on [Route] 91 in Holyoke to check on the well-being of the occupant. Upon arousing [the defendant] from a resting condition, [Trooper] Shugrue inquired as to whether [the defendant] was alright, to which the [defendant] replied that he was. [Trooper] Shugrue then, based on [the defendant's] bloodshot eyes and an odor of alcoholic [beverage] emanating from [the] vehicle, asked [the defendant] to get out of his vehicle to perform some field sobriety tests. Ultimately, [the defendant] was placed under arrest for [operating while under the influence].

> "I find that once the [trooper] had determined that [the defendant] was okay, his reason for conducting a 'well-being' check was accomplished. The [trooper] did not, based on the appearance of [the defendant's] eyes, and on odor of alcoholic [beverage], have probable cause to ask [the defendant] to then exit his car and perform field sobriety tests. Therefore, the results of the field sobriety tests are the result of an illegal search [and] seizure and are suppressed. Motion allowed."

2. *Discussion.* In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given oral testimony

---

[1]The judge's decision was in the form of a handwritten notation on the defendant's motion. We expand the judge's abbreviations for the sake of clarity.

presented at the motion hearing. See *Commonwealth* v. *Yesilci-man*, 406 Mass. 736, 743 (1990), and cases cited. Moreover, we give substantial deference to the judge's ultimate findings and conclusions of law, "but independently review[] the correctness of the judge's application of constitutional principles to the facts found." *Commonwealth* v. *Magee*, 423 Mass. 381, 384 (1996), quoting *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995). See *Commonwealth* v. *Alvarado*, 420 Mass. 542, 544 (1995). We conclude that the motion judge erred in requiring a showing of probable cause rather than reasonable suspicion to justify the trooper's administration of field sobriety tests to the defendant. However, because the judge's findings are insufficient to determine whether the trooper had a reasonable basis for suspecting that the defendant was operating while under the influence, we remand the case to the District Court for further findings of fact and a ruling on the defendant's motion to suppress under the correct constitutional standard.

Initially, we must determine at what point Trooper Shugrue's interaction with the defendant intruded on the defendant's right to personal security under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, thus necessitating a justification in the form of either probable cause or reasonable suspicion. The judge implicitly concluded that the trooper's initial approach to the vehicle to inquire about the occupant's well-being was not constitutionally infirm.[2] This conclusion comports with our decisions affirming the propriety of well-being checks of motorists conducted by law enforcement officers. In *Commonwealth* v. *Leonard*, 422 Mass. 504, 505-506 & n.1, cert denied, 519 U.S. 877 (1996), we held that a State trooper who approached a vehicle stopped in a breakdown area on a public roadway, knocked on the window, opened the driver's door to inquire about her well-being, and, on detecting the odor of alcohol on her breath, arrested her for operating while under the influence, had not

---

[2]Additionally, during the hearing on the motion to suppress, the judge curtailed the Commonwealth's presentation of evidence regarding the trooper's initial approach to the defendant's vehicle, instructing the prosecutor that he saw no problem with that part of the trooper's inquiry and that the sole issue before him was the legality of the trooper's further investigation of the defendant for operating under the influence of alcohol. We note that defense counsel concurred with this narrowing of the legal dispute by the motion judge, but proceeded to argue, nevertheless, that the trooper's initial inquiry of the defendant was constitutionally suspect.

intruded impermissibly on the motorist's art. 14 and Fourth Amendment rights. With respect to the trooper's conduct up to, and perhaps including, his opening the vehicle door, we concluded that such a routine inquiry by a police officer into the well-being of an occupant of a parked vehicle, even if not conducted pursuant to an explicit policy, did not constitute a "seizure" that required constitutional justification, as it involved no physical force or show of authority that could reasonably be construed as a restraint on the motorist's liberty. See *id.* at 508, and cases cited. See also *Commonwealth* v. *Doulette*, 414 Mass. 653, 655 (1993) (trooper's actions in leaving cruiser, approaching defendant's automobile in public parking lot, and shining flashlight inside vehicle not "stop" or "search" under Fourth Amendment); *Commonwealth* v. *Fraser*, 410 Mass. 541, 543-544 (1991), citing *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980) (no seizure within meaning of Fourth Amendment where police approach individual and ask questions "unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to . . . walk away"). We expressly distinguished the facts before us in *Commonwealth* v. *Leonard*, *supra*, from the investigatory checks of parked vehicles in *Commonwealth* v. *King*, 389 Mass. 233, 241 (1983), and *Commonwealth* v. *Helme*, 399 Mass. 298, 300, 302 (1987), where we applied the Fourth Amendment's reasonableness test to police officers' approaches of parked automobiles, on the ground that in each of those cases a trooper had blocked the defendant's vehicle with his cruiser prior to his initial approach, thus effecting a seizure of the defendant under *Terry* v. *Ohio*, 392 U.S. 1 (1968).[3] See *Commonwealth* v. *Leonard*, *supra* at 508; *Commonwealth* v. *Doulette*, *supra* at .656-657 (noting same distinction). See also *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998); *id.* at 495 (Fried, J.,

[3]The defendant cites *Commonwealth* v. *Tompert*, 27 Mass. App. Ct. 804 (1989), in support of his contention that the trooper's very approach of the defendant's vehicle was an investigatory check that, by itself, implicated the defendant's constitutional right to security and thus requires a showing of reasonableness. However, we have previously read *Tompert* to mean not that an officer's initial approach of a parked vehicle at a rest area, without more, is a stop or seizure that requires constitutional justification, but rather that once the approaching officer goes beyond this initial inquiry to effect a *Terry*-type search of the vehicle or its occupants, this further inquiry amounts to an intrusion on constitutionally protected rights for which there must be some justification. See *Commonwealth* v. *Doulette*, 414 Mass. 653, 656 (1993).

concurring, with whom Lynch, J., joined) (activation of cruiser's blue lights prior to trooper's approach of defendant's stopped vehicle constitutes "seizure" under art. 14 and Fourth Amendment).

Similarly, in *Commonwealth* v. *Murdough*, 428 Mass. 760, 763-764 (1999), which involved a well-being check by State troopers on a vehicle parked in the rest area of an interstate highway, we concluded that the troopers' approaching the vehicle, knocking on its window, and inquiring whether the occupant, who was asleep inside with the brake lights on, required assistance, was an "entirely noncoercive inquiry" that "raised no constitutional issue at all" and that thus required no "preliminary showing of need or reasonableness." Significantly, we noted that the police, as long as they neither assert nor imply that a person inquired of is not free to ignore their inquiries, may "knock on any vehicle window without having to explain why, should that initial, noncoercive inquiry ripen into something more," and that, on the facts presented, the "point at which a constitutional question first arose . . . was when the defendant was told to get out of his vehicle." *Id.*

It follows from these decisions that, by walking up to the defendant's parked vehicle at the rest area, knocking on the window, shining his flashlight inside and asking whether the defendant was "all set," Trooper Shugrue did not engage in any conduct that requires constitutional justification, as he neither asserted nor implied that the defendant was not free at that moment to ignore this inquiry into his well-being.[4] In our view (and as the motion judge implicitly found), the point at which

---

[4]Nothing in the record supports the defendant's assertion that the trooper "specifically targeted" his vehicle for investigation because the trooper saw him asleep inside, nor did the judge make any finding to this effect. The trooper testified that he heard the vehicle's engine idling and saw the defendant inside with his eyes closed *as* he approached the vehicle. In any event, even if the trooper had decided to approach the defendant's vehicle because, and only after, he observed these facts, this would not change our analysis of the propriety of his initial approach. See *Commonwealth* v. *Murdough*, 428 Mass. 760, 761, 763 (1999) (no intrusion on defendant's Fourth Amendment rights where troopers, having observed defendant asleep in vehicle parked in rest area with brake lights on, approached to inquire about defendant's well-being). The defendant's claim that this well-being check was constitutionally suspect because it was purely discretionary and not conducted pursuant to a policy of checking all vehicles parked at rest areas is also unavailing. Again, the judge made no explicit findings on this issue. However, as noted above, the judge implicitly found that the well-being check on the defendant's vehicle

the trooper's conduct intruded on the defendant's Fourth Amendment and art. 14 rights was when, following the defendant's response to the trooper's inquiry concerning his well-being, the trooper inquired further whether the defendant had been drinking and subsequently asked the defendant to get out of his vehicle to perform field sobriety tests. At this point, it was reasonable for the defendant to conclude that he was no longer free to leave and that his cooperation with the trooper's investigation was no longer voluntary, and the trooper's interaction with the defendant thus ripened into a search or seizure within the meaning of the Fourth Amendment and art. 14. See *Terry* v. *Ohio, supra*; *Commonwealth* v. *Blais*, 428 Mass. 294, 297 (1998). In determining whether such a search or seizure is constitutionally justified, we inquire, first, whether the investigation was validly initiated and, second, whether the scope of the search was justified by the circumstances. See *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974).

The motion judge concluded that, based on the defendant's bloodshot eyes and the odor of alcohol on his breath, Trooper Shugrue lacked probable cause that the defendant had committed or presently was committing a criminal offense, and that the administration of field sobriety tests to the defendant was thus constitutionally impermissible. The judge erred, however, in applying a probable cause standard to the trooper's seizure of the defendant. In *Commonwealth* v. *Blais, supra* at 297-298, we expressly rejected the argument that the administration of field sobriety tests is the type of invasive search for evidence of criminal conduct that is justifiable only as an incident of a lawful arrest based on probable cause, holding, instead, that the detention of a person for the purpose of administering such tests constitutes a minimal intrusion on Fourth Amendment and art. 14 rights that is justified where the officer has reasonable suspicion, based on specific, articulable facts and reasonable

presented no constitutional difficulties, a finding which is supported by Trooper Shugrue's testimony that he was making a routine check of vehicles parked at the rest area just prior to the start of his patrol. We defer to such findings absent clear error. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990); *Commonwealth* v. *Angivoni*, 383 Mass. 30, 33 (1981). See also *Commonwealth* v. *Leonard*, 422 Mass. 504, 508-509, cert. denied, 519 U.S. 877 (1996) (claim that well-being check of motorist in possible need of assistance is permissible only if conducted pursuant to an explicit and perhaps even invariable policy "overreads" our decisions in this area of search and seizure law).

inferences therefrom, that the motorist is operating while under the influence of drugs or alcohol. We likened brief detentions for field sobriety tests to permissible detentions of suspects for purposes of checking identification, see *id.* at 297, citing *Commonwealth* v. *Barros*, 425 Mass. 572, 585 (1997); and *Commonwealth* v. *Salerno*, 356 Mass. 642, 646-647 (1970), and reasoned, alternatively, that the significant danger posed by motorists who operate while under the influence of intoxicants renders a brief detention for field sobriety tests, when based on reasonable suspicion, a valid search or seizure for purposes of averting a threat to public safety. See *id.* at 298, citing *Terry* v. *Ohio, supra* at 24. See also *Commonwealth* v. *Murdough, supra* at 764 ("If the community caretaking function . . . means anything, surely it allows a police officer to determine whether a driver is in such a condition that if he resumes operation of the vehicle, in which he is seated at a highway rest stop, he will pose . . . an extreme danger to himself and others"); *Commonwealth* v. *Cameron*, 44 Mass. App. Ct. 912, 913-914 n.2 (1998), citing *Berkemer* v. *McCarty*, 468 U.S. 420, 439 (1984), and *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 881 (1975) (reasonable suspicion that motorist has committed criminal offense of operating under the influence justifies brief detention for field sobriety tests).

The defendant argues, citing our decision in *Commonwealth* v. *Loughlin*, 385 Mass. 60, 62-63 & n.3 (1982), that, because the trooper's well-being inquiry of the defendant had concluded without incident prior to his detecting evidence that the defendant might be operating while under the influence, his further inquiry into the defendant's possible intoxication, including the administration of field sobriety tests, could only be justified by probable cause. See *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 677-678 & n.7, 679 n.10 (1999) (Fried, J., dissenting, with whom Lynch, J., joined) (Fourth Amendment requires probable cause to extend stop beyond time necessary to complete purpose for which stop was made). However, even if this asserted sequence of events were supported by the record,[5] this would not, in the circumstances, necessitate a showing of

---

[5]The judge did not explicitly find the sequence of events the defendant asserts, nor is this sequence supported by the record, which reveals that the trooper detected indicia of the defendant's intoxication in the course of inquiring about the defendant's well-being, as the defendant turned to him and spoke.

probable cause to justify the trooper's subsequent conduct. For in *Commonwealth* v. *Loughlin, supra,* an officer's threshold inquiry of the occupants of a vehicle, supported by reasonable suspicion, had concluded without detecting any evidence to support that suspicion, but the officer nevertheless ordered the occupants to get out of the vehicle and searched it, thereby discovering evidence of a crime. We noted that, once the threshold inquiry had concluded with the production of a valid license and registration, the purpose of the inquiry had been accomplished and the defendants should have been free to go; nothing short of probable cause of criminal activity would suffice to warrant extending the duration of the defendants' detention or a search of the vehicle.[6] See *id.* The situation here is different. As we have observed, no *Terry*-type stop of the defendant's vehicle, which was already stopped, or seizure of the defendant's person preceded the trooper's inquiry concerning possible intoxication. A search or seizure requiring constitutional justification was thus initiated only at the point when the trooper either inquired of the defendant whether he had been drinking that evening or subsequently asked him to get out of his vehicle to perform field sobriety tests. In these circumstances, reasonable suspicion that the defendant was operating while under the influence of intoxicants would suffice to justify the minimally intrusive detention and search that field sobriety tests entail. See *Commonwealth* v. *Blais, supra* at 296.[7]

However, we are unable to determine from the judge's find-

[6]But see *Commonwealth* v. *Torres,* 424 Mass. 153, 158 (1997) (routine traffic stop and threshold inquiry of motorist, predicated on reasonable suspicion, concluded with production of valid license and registration; further inquiry would be justified only by reasonable suspicion grounded in specific, articulable facts); *Commonwealth* v. *King,* 389 Mass. 233, 243-244 (1983) (once initial investigatory check of parked vehicle, based on reasonable suspicion, ended without incident, further investigation of motorist unjustified absent "reasonable ground").

[7]*State* v. *Markgraf,* 59 Wash. App. 509, 512-513 (1990), cited by the defendant, is not to the contrary. There, a Washington State appellate panel reversed a denial of a defendant's motion to suppress evidence of drug possession on the grounds that the police, having conducted a well-being inquiry of the defendant in his parked car that ended with the defendant's response that he needed no assistance, violated the defendant's rights under the Fourth Amendment by extending the inquiry and requesting proof of identification. The court, however, did not conclude that probable cause was required to justify this further inquiry, but rather that the inquiry, while a "minimal intrusion" on the defendant's rights, was not reasonable in light of the

ings whether, in the circumstances, the trooper had a reasonable basis to suspect that the defendant was operating while under the influence of intoxicants before he asked him to get out of the vehicle and perform field sobriety tests. The standard for reasonable suspicion is an objective one; "[t]he question is whether a reasonable person in the trooper's position would be justified by some objective manifestation to suspect that the defendant was, or was about to be, engaged in criminal activity or would be warranted in the belief that his safety or the safety of others was endangered." *Commonwealth* v. *King, supra* at 243, citing *United States* v. *Cortez,* 449 U.S. 411, 417 (1981). The judge apparently credited Trooper Shugrue's testimony that the defendant's eyes were red and watery and that his breath smelled of alcohol, for he based his ruling concerning the absence of probable cause on these implicit findings. Trooper Shugrue also testified, however, that, as he approached the defendant's vehicle, he heard its engine running, and that as the defendant responded to the well-being inquiry, he detected the defendant's slightly "slurred, thick-tongue[d]" speech. The judge's findings are silent with respect to these additional elements of the trooper's testimony, neither accepting nor rejecting them.

Whether the vehicle's engine was running when the trooper initiated his seizure of the defendant is a matter of critical importance to the defendant's motion to suppress, for "operat[ion]" of a motor vehicle, G. L. c. 90, § 24, as we have construed the term, is not limited to driving a vehicle or setting it in motion, but encompasses also the intentional act of starting the vehicle's engine. See *Commonwealth* v. *Uski,* 263 Mass. 22, 24 (1928) ("[a] person operates a motor vehicle within the meaning of G. L. c. 90, § 24, when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle"). See also *Commonwealth* v. *Ginnetti,* 400 Mass. 181, 184 (1987) (starting engine of vehicle, or making use of power provided by engine, constitutes "operation" of motor vehicle for purposes of G. L. c. 90, § 24); *Commonwealth* v. *Sudderth,* 37 Mass. App. Ct. 317, 320-321 (1994) (intoxicated driver asleep in vehicle with key in ignition and engine running warrants inference of "operation"; driver's

circumstances and the known facts (i.e., defendant had "dazed, confused look" when police shone light on him at night).

intention in starting vehicle is not element of statutory offense of operating while under influence). Accordingly, if the judge credited the trooper's testimony about the idling engine and the defendant's slurred speech, then these facts, together with the judge's findings that the defendant had bloodshot eyes and an odor of alcohol on his breath, would warrant not merely reasonable suspicion, but probable cause to arrest the defendant, thus rendering the field sobriety tests an incident of a lawful detention and their results admissible at trial. See *Commonwealth* v. *Blais, supra* at 296, citing *Commonwealth* v. *McGrail,* 419 Mass. 774, 776 (1995) (trooper had probable cause to arrest defendant for operating while under the influence, even prior to administering field sobriety tests, where defendant was observed driving vehicle, was its sole occupant, had slurred speech, red glassy eyes, and strong odor of alcohol on his breath).[8] Conversely, if the judge disbelieved the trooper's testimony about these matters, then the facts would not warrant a reasonable suspicion that the defendant was engaged in conduct that was either illegal or a threat to public safety, and the results of the field sobriety tests would properly be suppressed as the fruits of an illegal search or seizure. Absent any findings, express or implicit, with respect to these factual issues, this case is appropriately remanded to permit the judge to clarify his findings or make additional findings, and, in light of the facts found, to determine the reasonableness of the trooper's detention of the defendant for field sobriety tests. See *Commonwealth* v. *Pietrass,* 392 Mass. 892, 901-903 (1984); *Commonwealth* v. *Hason,* 387 Mass. 169, 176-177 (1982).

Accordingly, we vacate the order suppressing the results of the defendant's field sobriety tests and remand the case to the District Court for further findings consistent with this opinion.

*So ordered.*

---

[8]The defendant argues that our conclusion that probable cause for arrest existed in *Commonwealth* v. *Blais,* 428 Mass. 294, 296 (1998), is inapposite for two reasons: the defendant in *Blais* was observed *driving* his vehicle prior to the officer's detection of his intoxicated condition, unlike the defendant here, who was parked; and the officer in *Blais* detected a "strong" odor of alcohol on the defendant's breath, whereas here the trooper testified to smelling only "an odor" of alcoholic beverage on the defendant's breath. As to the first point, we note, *supra,* that "operating" in G. L. c. 90, § 24, is not limited to driving. As to the defendant's second point, we do not consider this a meaningful factual distinction.